512 So.2d 961 (1987)
Jack E. FIELDS and Mary S. Fields, Appellants,
v.
SARASOTA-MANATEE AIRPORT Authority, a Body Politic and Corporate, Appellee.
Nos. 86-282, 86-2312.
District Court of Appeal of Florida, Second District.
July 8, 1987.
Rehearing Denied September 16, 1987.
*962 S.W. Moore and Alan E. Deserio, of Brigham, Moore, Gaylord, Schuster & Sachs, Tallahassee, and Lee H. Haworth of Isphording, Korp & Muirhead, Sarasota, for appellants.
A. Lamar Matthews, Jr. and Steven D. Hutton of Williams, Parker, Harrison, Dietz & Getzen, Sarasota, for appellee.
RYDER, Judge.
Appellants, Jack and Mary Fields, and more than one hundred other landowners living in the vicinity of Sarasota-Bradenton Airport, brought suit against the Sarasota-Manatee Airport Authority alleging that overflights of aircraft flying into and out of the airport had occurred with such frequency and intensity as to have ripened into the taking of an avigational easement over their property. Appellants claimed that they were substantially deprived of the residential use of their properties due to the intrusion of vibrations, fumes, residue, and noise. They also claimed that the overflights created fear and anxiety in them.
In their complaint, appellants alleged that the noise from an increase in "jet and jet prop aircraft" from "1978 to date" at the airport "destroyed the residential use and character of their properties and also caused a substantial decrease in the market value of their properties." Appellee answered asserting three affirmative defenses: (1) appellants knew of the existence of the airport and its activities prior to the purchase of their properties; (2) appellee acquired a prescriptive easement over appellants' properties; and (3) the United States government, through its Civil Aeronautics Board which found that the area would not suffer a significant impact if the airport were deregulated, was responsible for the alleged damage to appellants' properties.
Eleven appellants testified at trial. In summary, they testified that the overflights of aircraft to and from the airport interfered with the use and enjoyment of their homes. Appellants presented two expert witnesses: Richard Klusza and Larry Sewell, both appraisers. Klusza compared the market experience of appellants' property with a comparable subdivision and found a "significant" difference in the market value and market time of appellants' property. Sewell performed a paired sales analysis and a survey of property owners living in the area and concluded that the market value of homes in appellants' area was lower than that in comparable subdivisions because of the impact of airport activity.
Appellee also presented two appraisers as expert witnesses, Roger Tegenkamp and James Doss. Tegenkamp performed appraisals of thirty-seven of appellants' homes at three different points in time and found that each of the thirty-seven homes had appreciated in value. Doss performed a market study of sales and resales of homes in appellants' area that he believed to be directly under the flight path and found that the homes were appreciating in value. He also performed a market study of appellants' area comparing market *963 trends in appellants' homes with three other subdivisions and found that appellants' homes were comparable to homes in the other subdivisions in terms of market time and appreciation.
After reviewing voluminous evidence, the trial judge, in a nonjury trial, ruled in favor of the airport authority holding that:
This cause came on before the Court upon an action by the Plaintiffs claiming that property owned by Plaintiffs has been "taken" by the Defendant, SARASOTA-MANATEE AIRPORT AUTHORITY, without payment of just compensation as required by the Fifth and Fourteenth Amendments to the United States Constitution and the analogous provisions of the Florida Constitution. Plaintiffs seek a mandatory injunction compelling the Airport Authority to institute eminent domain proceedings to condemn an avigational easement in the airspace above their residence due to noise, height, lights, vibrations, and fumes from aircraft utilizing the airport.
Clearly under Florida Law, the Plaintiffs are entitled to this relief if they can plead and prove the following:
(1) that aircraft invade the Plaintiffs' super adjacent airspace causing a direct and immediate interference with the use of the land; or
(2) that Plaintiffs have suffered a substantial ouster and deprivation of all beneficial use of their properties.
However, both legal theories require that Plaintiffs prove a substantial adverse impact upon the market value of their land before an injunction can be issued.
Plaintiffs in this proceeding do not allege that they have been substantially ousted and deprived of all beneficial use of their land nor were there facts proving that such was the case. The Plaintiffs in the case sub judice seek relief on the first theory of law as set forth above.
There is no doubt that airport operations have cause annoyance and intermittent disruption in varying degrees to the Plaintiffs in this action, most especially the late and deep night operations. The testimony, exhibits, and common sense dictates [sic] the conclusion that as airport operations increase, so do those operations increasingly impact upon the Plaintiffs' beneficial use and enjoyment of their respective properties.
The prayer for injunctive relief, in essence, must rise or fall on the issue as to whether or not the impact of airport operations have caused a substantial adverse impact upon the market value of the Plaintiffs' land.
As in all adversarial proceedings, there was conflicting evidence in regard to valuations and conclusions concerning those valuations of the various properties. The one fact that can be gleaned from the testimony and exhibits is that overall absolute market values in the Whitfield-Ballentine areas have shown an increase from year to year.
The question then becomes what would the value of the properties have been but for the airport and conversely, does "decreased increase" in value equate to a substantial loss in market value thus allowing the remedy of inverse condemnation. In other words, is the inverse condemnation remedy available to equalize the increase in value of Plaintiffs' property with value increases in similar property situated elsewhere?
The Court can find no cases that rules [sic] directly on this point. However, in the case of Adams v. County of Dade, 335 So.2d 594 (Fla. 3d DCA 1976), cert. denied, 344 So.2d 323 (Fla. 1977) and the case of Donald W. Krichbaum and Joy P. Krichbaum v. Palm Beach County, Final Summary Judgment entered February 23, 1983, the dicta appears to suggest that there must be an actual loss in market value before the extraordinary remedy of inverse condemnation can be sustained. The Adams v. County of Dade case, supra, is very similar factually with the case sub judice. There was a real and continuing impact upon the properties surrounding the airport. However, there was substantial evidence demonstrating that not only had there been no diminution of the value of the property, but in fact, there was an increase *964 in the value. The issue of equalized value vis a vis similar properties was brought forth in the Krichbaum v. Palm Beach case, supra, and cursorily dismissed.
From a plain reading of the above cases and other cases regarding inverse condemnation proceedings, this Court finds that "substantial loss in market value" was not and cannot be equated with a "decreased increase" in market value. Therefore, the inverse condemnation remedy is not available to equalize the increase in value of Plaintiffs' property with value increases in similar property situated elsewhere.
This Court takes a similar stance as did Honorable William C. Williams in rendering the Final Summary Judgment in the Krichbaum v. Palm Beach County case, supra, where it is stated that, "The Court is not unsympathetic with homeowners such as Plaintiffs who suffer daily exposure to airport noise. The conclusions reached in this opinion relate only to the availability, on the record presented, of the particular relief which Plaintiffs seek in this action. Similarly, this opinion is not to be construed as expressing a view on the merits of the ongoing political controversy surrounding (Sarasota-Bradenton Airport Authority) or as a vindication of any acts or omissions of the (Authority) in connection therewith."
This Court simply holds that Plaintiffs did not prove a "substantial loss in market value" under the facts presented at trial, and that the Sarasota-Manatee Airport Authority is entitled to judgment.
It is, therefore,
ORDERED AND ADJUDGED:
1. That Plaintiffs failed to prove a substantial loss in market value and thereby cannot avail themselves of the inverse condemnation remedy.
2. Final Judgment is hereby entered in favor of Defendant and against Plaintiffs.
The factual findings of the trial judge, in a nonjury trial, "are entitled to the weight of a jury verdict because the entire testimony was personally heard by him and he had the opportunity to see the witnesses and evaluate their testimony under oath from the witness stand." First Atlantic National Bank v. Cobbett, 82 So.2d 870 (Fla. 1955). The trial judge's factual findings will not be disturbed unless "it is shown that there was a complete lack of substantial testimony to support the conclusions of the trial judge." Id. at 871. We hold that there was competent substantial evidence to support the trial court's judgment in the case at hand. Thus, we affirm.
On appeal, appellants argue that the trial court erred in requiring appellants to prove a substantial ouster and deprivation of all beneficial use of their properties. Appellants contend that demonstrating a "decreased increase" in the market value of their properties was sufficient.
The United States and Florida Constitutions prohibit the taking of private property without just compensation. More specifically, article X, section 6(a), Florida Constitution provides that:
No private property shall be taken except for a public purpose and with full compensation therefor paid to each owner or secured by deposit in the registry of the court and available to the owner.
Airport operations may result in a taking of private property within the constitutional meaning of the term "taking." Since the United States Supreme Court decisions in United States v. Causby, 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946) and Griggs v. Allegheny County, 369 U.S. 84, 82 S.Ct. 531, 7 L.Ed.2d 585 (1962), both federal and state courts have held that frequent low-level flights over private land may result in a taking within the meaning of the fifth amendment. Some courts have construed Causby and Griggs more liberally than others. The most conservative courts have required that aircraft invade the air space directly over the plaintiff's property and that the overflights render the property uninhabitable. Batten v. United States, 306 F.2d 580 (10th Cir.1962), cert. denied, 371 U.S. 955, 83 S.Ct. 506, 9 L.Ed.2d 502 (1963). A more liberal stance was adopted by the Supreme Court of Oregon, requiring only that the "interference with use and enjoyment" be *965 "sufficiently direct, sufficiently peculiar, and of sufficient magnitude to support a conclusion that the interference has reduced the fair market value of the plaintiff's land by a sum certain in money." Thornburg v. Port of Portland, 233 Or. 178, 376 P.2d 100 (1962).
A decision from the Supreme Court of Washington goes even further by finding a taking "where the flights in question caused such interference with the use and enjoyment of the property as to result in a measurable diminishment in market value." Martin v. Port of Seattle, 64 Wash.2d 309, 391 P.2d 540 (1964), cert. denied, 379 U.S. 989, 85 S.Ct. 701, 13 L.Ed.2d 610 (1965). Washington's constitution, however, provides compensation for a "taking" or a "damaging" of property.
Florida's decisions in this area fall on the more conservative end of the spectrum. In Florida, a property owner must demonstrate substantial damage to be entitled to inverse condemnation in airport cases. While Florida courts have recognized that airport noise and/or intense vibration produced by low flying aircraft can result in inverse condemnation, the Florida courts have required that a property owner prove either (1) a continuing physical invasion of his property, Village of Tequesta v. Jupiter Inlet Corp., 371 So.2d 663 (Fla. 1979), cert. denied, 444 U.S. 965, 100 S.Ct. 453, 62 L.Ed.2d 377; or (2) a substantial ouster and deprivation of all beneficial use of his property. Division of Administration, State of Florida Department of Transportation v. West Palm Beach Garden Club, 352 So.2d 1177 (Fla. 4th DCA 1977). Appellants failed to demonstrate either.
The most appellants demonstrated at trial was a "decreased increase" of one percent in the value of their properties. It is pure speculation whether the "decreased increase" was due to the airport operations or due to totally unrelated factors. This case is similar to Adams v. County of Dade, 335 So.2d 594 (Fla. 3d DCA 1976), cert. denied, 344 So.2d 323 (Fla. 1977), wherein the appellants brought an inverse condemnation action alleging air avigational easements over and near their properties. In Adams, the trial judge
made lengthy findings of fact in which he determined that plaintiffs have been subjected constantly to at least 100 decibels on the relative scale of intensity of sound as well as vibrations, odors, noxious fumes and other exhaust pollutants from low flying jet aircraft. He then held that for plaintiffs to be entitled to relief they must show that the direct and substantial invasion of their property rights is of such magnitude that they are deprived of the practical enjoyment of their property and such invasion results in a definite and measurable diminution of the market value. Concluding that plaintiffs failed to demonstrate such a definite and measurable diminution of the market value of the property, the judge denied their claim.
Id. at 595.
On appeal, the court affirmed the trial court holding that "there being substantial evidence demonstrating that not only has there been no diminution of the value of the property, but, in fact, an increase in the value, the trial judge was eminently correct in denying plaintiffs' claim for damages." Id. at 596.
Because appellants have failed to show more than a "decreased increase" and because the property has increased in value, the trial court was correct in holding that appellants "failed to prove a substantial loss in market value" and thus were not entitled to compensation for inverse condemnation. Under the Florida Constitution and Florida case law, a "decreased increase" of one percent in the value of a landowner's property is not a continuing invasion of property, nor ouster or deprivation of all beneficial use of the landowner's property and does not entitle the landowner to compensation for inverse condemnation.
Affirmed.
DANAHY, C.J., and THREADGILL, J., concur.