**T.J. FOUNTAIN, Jr., individually and d/b/a Fountain Oil Company, Plaintiff–Appellant,**

**v.**

**METROPOLITAN ATLANTA RAPID TRANSIT AUTHORITY, Defendant–Appellee.**

No. 87–8601.

United States Court of Appeals, Eleventh Circuit.

July 21, 1988.

George P. Dillard, Atlanta, Ga., for plaintiff-appellant.

Barclay T. Macon, Jr., Kutak Rock & Campbell, Atlanta, Ga., for defendant-appellee.

Before KRAVITCH, Circuit Judge, HENDERSON *, and HENLEY **, Senior Circuit Judges.

HENDERSON, Senior Circuit Judge:

T.J. Fountain, Jr. appeals from a final order entered by the United States District Court for the Northern District of Georgia granting the Metropolitan Atlanta Rapid Transit Authority's ("MARTA") motion for summary judgment in this inverse condemnation case brought pursuant to 42 U.S.C. § 1983. We affirm.

This current controversy follows a long and tortuous path through the state and federal courts. Fountain owned a gasoline service station located at the northeastern corner of the intersection of Howard Avenue and East Lake Drive in Decatur, Georgia. In January, 1976, DeKalb County, Georgia instituted an eminent domain action in the DeKalb County Superior Court to acquire two easements over and across Fountain's property for the construction and maintenance of a surface water retention pond that was to be part of the drainage system for the East Lake station of the MARTA rapid rail line. Fountain filed a variety of defensive pleadings, including a motion to dismiss and a counterclaim for damages arising out of the anticipated closing of East Lake Drive and other streets near his business. A special master appointed by the court to hear the case overruled Fountain's motion to dismiss and held that the issues raised by his counterclaim were outside the scope of the pending condemnation action. These rulings were adopted by the superior court. Fountain's subsequent appeal to the Georgia Supreme Court was dismissed in October, 1976 because "[t]he case is still pending in the trial court and piecemeal review of the rulings of the trial court is not permissible...." *Fountain v. DeKalb County,* 238 Ga. 14, 15, 231 S.E.2d 49, 50 (1976).

In February, 1977, the case went to trial. Prior to trial, MARTA had been joined as an additional party plaintiff. After judgment had been entered upon the jury's verdict, Fountain again filed an appeal to the Georgia Supreme Court. The Georgia Supreme Court transferred the case to the Georgia Court of Appeals which reversed the superior court judgment because of an erroneous jury instruction. *Fountain v. MARTA,* 147 Ga.App. 465, 249 S.E.2d 296 (1978).

The case was again tried in June, 1979. Fountain appealed that judgment as well to the Georgia Court of Appeals. The Court of Appeals affirmed the trial court's judgment, holding that the trial court correctly refused to consider Fountain's counterclaim since it "was premature and not properly part of the condemnation action...." *Fountain v. DeKalb County,* 154 Ga.App. 302, 303, 267 S.E.2d 903, 904 (1980).

While this latter appeal from the DeKalb Superior Court was pending in the Georgia Court of Appeals, Fountain filed this action in the United States District Court for the Northern District of Georgia. He alleged in his complaint that "access" to his property had been "taken," i.e. substantially interfered with, by MARTA's construction activities and that MARTA was indebted to him for "just compensation" under both the state and federal constitutions. The district court dismissed the complaint, holding that Fountain had not established federal question jurisdiction. Fountain appealed the dismissal to this court. While his appeal was pending, Fountain filed an

* *See* Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

** Honorable J. Smith Henley, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

identical inverse condemnation action in the Superior Court of Fulton County, Georgia.

This court reversed the district court's dismissal. However, in light of the "novel questions of state law" presented by the case, we directed the district court to abstain from holding any further proceedings until the completion of the parallel state court action. *Fountain v. MARTA,* 678 F.2d 1038, 1046 (11th Cir.1982). The court further directed the district court "to retain jurisdiction until it becomes apparent that [Fountain] cannot obtain an adjudication on the merits of his claim in state court." *Id.*

The state inverse condemnation suit was tried before a jury in Fulton County Superior Court from October 16 through October 23, 1984. The jury found that there was no "taking" of Fountain's property and returned a verdict in MARTA's favor. After the trial court denied his motions for judgment notwithstanding the verdict and for a new trial, Fountain appealed to the Georgia Supreme Court. The Georgia Supreme Court again transferred the case to the Georgia Court of Appeals which reversed the trial court's refusal to grant a directed verdict in favor of Fountain. The court held that Fountain was entitled to a directed verdict under the Georgia Constitution. *Fountain v. MARTA,* 179 Ga.App. 318, 346 S.E.2d 363 (1986). MARTA filed a petition for a writ of certiorari in the Georgia Supreme Court which reversed the judgment of the Georgia Court of Appeals and affirmed the judgment of the trial court. *MARTA v. Fountain,* 256 Ga. 732, 352 S.E.2d 781 (1987). The court held that under the Georgia Constitution, "MARTA should have prevailed as a matter of law." 256 Ga. at 734, 352 S.E.2d at 783. Consequently, the judgment of the trial court was affirmed. *Id.*

Rather than petitioning for a writ of certiorari in the United States Supreme Court for a review of this adverse decision, Fountain filed a motion for summary judgment in the district court case urging that MARTA be held liable under the fifth and fourteenth amendments to the United States Constitution. MARTA filed a cross-motion for summary judgment, claiming that Fountain's federal claims are barred by the doctrines of res judicata and collateral estoppel. In an order dated June 30, 1987, the district court rejected MARTA's res judicata argument but held that Fountain's federal claims were precluded by the doctrine of collateral estoppel. This appeal followed.

Collateral estoppel is applicable where (1) the issue at stake is identical to the one involved in the prior litigation; (2) the issue was actually litigated in the prior action; (3) the determination of the issue in the prior litigation was a critical and necessary part of the judgment in the prior litigation; and (4) the party against whom the earlier decision is asserted has had a full and fair opportunity to litigate the issue in the prior action. *I.A. Durbin, Inc. v. Jefferson National Bank,* 793 F.2d 1541, 1549 (11th Cir.1986). The district court concluded that the state trial judge refused to consider Fountain's federal constitutional claims. Nonetheless, the court held that the "takings" issue was actually litigated in the state court because the trial court's instructions on state constitutional law were sufficiently broad to encompass the federal claims.

While we agree with the district judge's determination that the doctrine of collateral estoppel applies to this case, we disagree with his conclusion that Fountain's federal claims were not addressed by the state trial court. In reaching its decision, the district court cites two statements made by the state trial judge during the course of the trial. At an early point of the proceedings, the judge stated, in response to a statement by Fountain's counsel about alleged federal violations being asserted under 42 U.S.C. § 1983, "that's not the question before me. I don't enforce the Civil Rights Act." Trial Transcript, at 24. Later in the trial, the judge, in response to another statement by Fountain's attorney about whether he had proffered a sufficient amount of evidence to establish a "taking" under the fifth amendment, stated that the case of *Department of Transportation v. Whitehead,* 253 Ga. 150, 317 S.E.2d 542 (1984), "covers this question.

So I don't have to approach the federal case." Trial Transcript, at 780. These statements were not made in the presence of the jury. On the other hand, the trial judge made explicit reference to both the Georgia and the United States Constitutions [1] in his broad instructions to the jury with respect to a "taking." Having before it both the federal and state law on the "takings" issue, the jury concluded that neither Fountain's property nor his property rights had been taken or damaged by MARTA without just compensation first being paid. We agree with the district court that the four elements for collateral estoppel have been met in this case.[2]

■ Fountain also contends that the state trial court erroneously excluded certain photographs from evidence showing construction by MARTA around his property. The exclusion of this evidence, he reasons, deprived him of a full and fair opportunity to litigate his federal claims. Foun-

---

1. The trial judge's instructions, in pertinent part, were as follows:

    Now, ladies and gentlemen, I charge you that the law provides that private properly shall not be taken or damaged for public purposes without just and adequate compensation being paid, being first paid.

    I charge you that the owner of property has a right to seek damages against a public authority when such public authority is engaging in some form of taking or damage without just and adequate compensation being first paid.

    The term 'taking' is defined to include not only the actual physical taking, but also any interference with the right of ownership, use, enjoyment, or any other right incident to the property, such as an easement, easement of access.

    ....

    The term 'property' is a very comprehensive one which is used not only to signify things real and personal but to designate rights of ownership in that which is subject to be owned and enjoyed. The term property comprehends not only the thing possessed but also the rights of a person to possess, use, enjoy and dispose of it.

    I charge you that the injury to the property need not necessarily be caused by acts involving—amounting to trespass or by actual physical invasion of the real estate. But if the plaintiff's property is depreciated in value by the deprivation of some right of use or enjoyment growing out of and appurtenant to his estate as a direct consequence of the construction and use of the public improvement, he may recover damages, if proven.

    I further charge you that substantially interfering with the access to the premises by impeding the easement of access or impeding or rendering difficult ingress and egress, if you so find, is such a taking and damaging as entitles the party to compensation.

    ....

    I charge you that what constitutes a taking depends on the facts in each case, but if there is a taking by a public authority, then compensation must be awarded.

    ....

    In making an award for just and adequate compensation, you are authorized and direct-

ed to consider that the damages to the owner are to be determined by the value of that which the owner has lost rather than that which the defendant has gained. And the owner of the property, in this case, Mr. T.J. Fountain, Jr., should be paid for that which is taken from him, that is, what he has lost. The owner must be fully and adequately compensated not only for the value of land taken but also for whatever other damages resulted to the plaintiff from the taking or damaging, if you should so find.

    ....

    I charge you that under the law of this state, the plaintiff is entitled to be put in as good a position pecuniarily, that is financially, as if his property had not been taken or damaged. The plaintiff must be made whole. If the property rights of the plaintiff—it is the property rights of the plaintiff that are safeguarded by the Constitution of this state *and of the United States* rather than what the cost might be to the defendant MARTA. [Emphasis added.]

2. Although we need not, and do not, reach the question of whether Fountain's federal claims are barred by the doctrine of res judicata, we note that the district court's conclusion that they were not barred on this ground was based on its belief, which we find to be erroneous, that none of the state courts considered Fountain's federal constitutional claims. *Cf. Brown v. Georgia Power Co.*, 371 F.Supp. 543 (S.D.Ga.1973), *aff'd*, 491 F.2d 117 (5th Cir.), *cert. denied*, 419 U.S. 838, 95 S.Ct. 66, 42 L.Ed.2d 65 (1974). *Brown*, of course, is binding precedent in this circuit. *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (*en banc*). The district court specifically stated that "ordinarily [, a plaintiff] should be required to pursue his federal constitutional claims by way of a petition for a writ of certiorari had the state court either procedurally or substantively ruled on those claims...." (District Court opinion at 8). *See also, District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482, 103 S.Ct. 1303, 1314, 75 L.Ed.2d 206, 222 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416, 44 S.Ct. 149, 150, 68 L.Ed.2d 362, 365 (1923).

tain never cites to any place in the record where any of these photographs were offered into evidence and excluded by the state trial court. Nor does he point to any reason why the trial court refused to admit these photographs into evidence. These photographs show scenes of general excavation and construction. However, they do not furnish any clue as to how this construction hampered the use of the property either by him or his customers. Moreover, several photographs of the MARTA excavation and construction project were admitted into evidence.

Fountain's remaining arguments lack merit and do not warrant further comment. The judgment of the district court is therefore

AFFIRMED.