**Jack E. FIELDS and Mary S. Fields, his wife, and Those Named In Attached Exhibit A, Plaintiffs,**

v.

**SARASOTA–MANATEE AIRPORT AUTHORITY, a body politic and corporate, Defendant.**

**No. 89–712–CIV–T–17(A).**

United States District Court, M.D. Florida, Tampa Division.

Jan. 14, 1991.

**378**

S. William Moore, Trial Atty., Brigham, Moore, Gaylord, Wilson, Ulmer, Schuster & Sachs, Sarasota, Fla., Gideon Kanner, Burbank, Cal., for plaintiffs.

A. Lamar Matthews, Jr., Williams, Parker, Harrison, Dietz & Getzen, Sarasota, Fla., for defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

KOVACHEVICH, District Judge.

This cause is before the Court on Defendant's motion for summary judgment and Plaintiffs' response thereto.

Plaintiffs Jack and Mary Fields along with twenty four others, all of whom reside in close proximity to the Sarasota–Bradenton Airport, brought an action for damages under 42 U.S.C. Section 1983 alleging violations of the Fifth and Fourteenth Amendments of the United States Constitution.

Defendant argues that Plaintiffs' claims have been fully litigated in the Florida courts and are therefore barred by the doctrines of res judicata and collateral estoppel.

From the mid–1970's to the present, airline traffic at the Sarasota–Bradenton Airport has nearly tripled. According to Plaintiffs, over ninety (90) percent of the airline traffic is handled by runway 13–31 (14–32). Plaintiffs' residential properties are within the path of runway 13–31 (14–32) and its approach areas and flight patterns.

In their initial complaint, filed in the 12th Judicial Circuit for the State of Florida, Plaintiffs alleged that the frequent low altitude flights over their properties, along with the noise that accompanies these overflights, had effected a servitude over their properties. Plaintiffs also claimed that the flights had substantially deprived them of the use and quiet enjoyment of their properties creating a *de facto* avigation easement. Additionally, Plaintiffs contended that Defendant had refused to compensate them for the taking of the servitude or for the avigation easement.

After a non-jury trial, the judge ruled that Plaintiffs inability to prove a substantial loss in market value precluded finding that a taking had occurred. As a result, the judge ruled that the remedy of inverse condemnation was not available to the Plaintiffs.

On appeal, the appellate court considered the prohibition against the taking of private property without just compensation contained in both the United States and Florida Constitutions. *Fields v. Sarasota–Manatee Airport Authority*, 512 So.2d 961, 964 (Fla. 2d DCA 1987). (Hereinafter referred to as *Fields I.*) According to the court, in Florida inverse condemnation will only be found where the property owner proves either: 1) a continuing physical invasion of his property; or 2) a substantial ouster and deprivation of all beneficial use of his property. *Fields I*, 512 So.2d at 965. In affirming the lower court's decision, the appellate court held that "the trial court was correct in holding that appellants (Plaintiffs) 'failed to prove a substantial loss in market value' and thus were not entitled to compensation for inverse condemnation." *Id.* The Florida Supreme Court refused review. *Fields v. Sarasota–Manatee Airport Authority*, 520 So.2d 584 (Fla.1988).

Plaintiffs subsequently filed a complaint in this Court putting forth substantially the same allegations as in the complaints filed in the Florida courts and claiming a violation of their constitutional rights of due process and just compensation. Plaintiffs additionally argue that the Florida courts misapplied applicable law by imposing a more onerous and burdensome test for taking of an avigation easement than the United States Supreme Court has deemed is

required under the United States Constitution.

Plaintiffs also note that they have exhausted all required non-judicial and judicial state remedies which they allege is a prerequisite to the filing of a suit in federal court under *Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnston City,* 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985).

This circuit clearly holds that summary judgment should only be entered when the moving party has sustained its burden of showing the absence of a genuine issue as to any material fact when all the evidence is viewed in the light most favorable to the nonmoving party. *Sweat v. The Miller Brewing Co.,* 708 F.2d 655 (11th Cir.1983). All doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *Hayden v. First National Bank of Mt. Pleasant,* 595 F.2d 994, 996–97 (5th Cir.1979), *quoting Gross v. Southern Railroad Co.,* 414 F.2d 292 (5th Cir.1969). Factual disputes preclude summary judgment.

The Supreme Court of the United States held, in *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986):

> In our view the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* at 322, 106 S.Ct. at 2552, 91 L.Ed.2d at 273.

The Court also said, "Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing there is a genuine issue for trial.'" *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. at 2553, 91 L.Ed.2d at 274. The Court is satisfied that no factual dispute remains which precludes summary judgment.

## I. RES JUDICATA AND COLLATERAL ESTOPPEL HAVE BEEN ESTABLISHED

■ "'(W)hen a federal court exercises federal question jurisdiction and is asked to give res judicata effect to a state court judgment, it must apply the "res judicata" principles of the law of the state whose decision is set up as a bar to further litigation.'" *Amey, Inc. v. Gulf Abstract and Title, Inc.,* 758 F.2d 1486, 1509 (11th Cir. 1985), *cert. denied,* 475 U.S. 1107, 106 S.Ct. 1513, 89 L.Ed.2d 912 (1986), *quoting Hernandez v. City of Lafayette,* 699 F.2d 734, 736 (5th Cir.1983), (*citing ED Systems Corp. v. Southwestern Bell Telephone Co.,* 674 F.2d 453, 457 (5th Cir.1982)). Under Florida law, res judicata bars subsequent litigation where there is: 1) identity in the thing sued for; 2) identity of the cause of action; 3) identity of the persons and parties to the actions; and 4) identity of the quality or capacity of the person for or against whom the claim is made. *Amey,* 758 F.2d at 1509, *citing Stevens v. Len–Hal Realty, Inc.,* 403 So.2d 507, 508 (Fla. 4th DCA 1981); *Seaboard Coastline Railroad v. Industrial Contracting Co.,* 260 So.2d 860 (Fla. 4th DCA 1972).

■ All four requirements for res judicata are met in this action:

1) In their state action Plaintiffs sought compensation for the taking of avigation easements over their properties. In their federal suit the same remedy is sought.

2) Identity of the cause of action is found where there is a "similarity of the facts essential to the maintenance of both actions." *Amey,* 758 F.2d at 1510, *quoting Pumo v. Pumo,* 405 So.2d 224, 225 (Fla. 3d DCA 1981). Plaintiffs' factual and legal allegations in their federal complaint are taken almost verbatim from their state court complaint. The claims are essentially identical.

3) All named plaintiffs in this federal action were plaintiffs in the state court action. The Sarasota–Manatee Airport Authority is the named defendant in both the state and federal court actions.

4) Plaintiffs have sued in their capacity as property owners living near the Sara-

sota–Bradenton Airport just as they did in their state court action. Defendant Authority is named as the owner and operator of the Sarasota–Bradenton Airport in both actions as well.

■ Collateral estoppel bars the relitigation of issues when: 1) the issue at stake in the second suit is identical to the one litigated in the prior litigation; 2) the issue was actually litigated; 3) the determination of the issue in the prior litigation was critical and necessary to the prior court's judgment; and 4) the party against whom the earlier decision is asserted had a full and fair opportunity to litigate the issue. *Fountain v. Metropolitan Atlanta Rapid Transit Authority*, 849 F.2d 1412, 1414 (11th Cir.1988). (Citations omitted)

As with res judicata, the requirements for collateral estoppel have been met:

1. In both actions the issue was whether the increased airplane overflights over Plaintiffs' properties rose to the level of a taking by the Authority and, if so, the amount of compensation due.

2. The trial court reviewed "voluminous evidence" before determining that no taking had occurred. *Fields I*, 512 So.2d at 963. The trial court's finding was thoroughly reviewed by the appellate court which affirmed the lower court's decision. The Florida Supreme Court refused review.

3. Determination of the taking issue was critical to the ultimate denial of compensation under inverse condemnation. In an action for inverse condemnation, an essential element is proof of a taking by the governmental body. *Pinellas County v. Brown*, 450 So.2d 240, 241 (Fla. 2d DCA 1984).

4. Plaintiffs had a full and fair opportunity to litigate the issue. Eleven plaintiffs testified at trial along with four expert witnesses. Plaintiffs further exercised their right to appeal.

II. *WILLIAMSON* DOES NOT PRECLUDE APPLICATION OF RES JUDICATA AND COLLATERAL ESTOPPEL

■ Plaintiffs seek to avoid the bars to relitigation brought about by res judicata and collateral estoppel by relying on the United States Supreme Court's holding in *Williamson*. Essentially, the Supreme Court in *Williamson* refused to consider a claim under the Fifth Amendment until the plaintiff had availed himself of all available remedies at the state level. The Court reasoned that "(t)he Fifth Amendment does not proscribe the taking of property, it proscribes taking without just compensation." *Williamson*, 473 U.S. at 194, 105 S.Ct. at 3120. Thus, a taking claim is not ripe until available state procedures for seeking compensation have been utilized and compensation has been denied. *Williamson*, 473 U.S. at 195, 105 S.Ct. at 3121.

Plaintiffs allege that they were merely following the dictates of *Williamson* by exhausting all state remedies before filing their claim in federal court. Had they filed earlier, their action would have been dismissed for lack of ripeness. How, they ask, can they now be barred by res judicata and collateral estoppel? Plaintiffs imply that if these doctrines are applied, the *Williamson* decision would lose its effect because virtually all such actions would be barred.

Plaintiffs arguments seem compelling at first. However, they are based on a shallow reading of the Supreme Court's holding in *Williamson*. *Williamson* sets forth two requirements for ripeness of a Section 1983 claim for money damages resulting from a taking of property in violation of constitutional rights: 1) "the initial decision-maker has arrived at a definitive position on the issue that inflicts an actual, concrete injury;" *Williamson*, 473 U.S. at 193, 105 S.Ct. at 3120, and 2) "plaintiff must show that the inverse condemnation procedure is unavailable or inadequate, and until it has utilized that procedure, its taking claim is premature." *Williamson*, 473 U.S. at 196–97, 105 S.Ct. at 3121–22. *See also Lake Lucerne Civic Ass'n v. Dolphin Stadium Corp.*, 878 F.2d 1360, 1372 (11th Cir.1989), *Corn v. City of Ft. Lauderdale*, 816 F.2d 1514, 1515–16 (11th Cir.1987).

Plaintiffs easily meet the first requirement—the state trial court ruled, the appel-

late court affirmed and the Supreme Court denied review. However, the second requirement is not fulfilled.

Florida provides the remedy of inverse condemnation in airport and aviation projects. *City of Jacksonville v. Schumann,* 199 So.2d 727, 729 (Fla. 1st DCA 1967). Therefore, Plaintiffs could not allege that the procedure was unavailable. Nor did they allege that it was inadequate. Rather, they utilized the inverse condemnation procedure provided by the state and were denied compensation. Plaintiffs now seek to rely on *Williamson* as a basis for readjudicating their taking claim. *Williamson,* however, does not abrogate res judicata and collateral estoppel doctrines.

The effect of the *Williamson* decision has been addressed by several courts. In *Beachy v. Board of Aviation Comm'rs of Kokomo, Ind.,* 699 F.Supp. 742 (S.D.Ind. 1988), the district court noted that "a takings claim generally is not ripe until the government has demonstrated that it does not intend to properly pay for the *appropriated property.*" *Beachy,* 699 F.Supp. at 745. (Emphasis added) The implication is that the government has effected a taking but denied compensation. In the case at bar, it has been conclusively determined that a taking *was not* effected.

Similarly, in *Fountain,* the Eleventh Circuit Court of Appeals found that the plaintiff's claims were barred by collateral estoppel. *Fountain,* 849 F.2d at 1414. In that case, the plaintiff initially filed an inverse condemnation action in Georgia state court. Ultimately, the Georgia Supreme Court found no taking and compensation was therefore denied. The plaintiff then refiled in federal district court. The district court determined that collateral estoppel applied to the case because "the takings issue was actually litigated in the state court because the trial court's instructions were sufficiently broad to encompass the federal claims." *Id.*

The same situation exists here. The Florida trial court considered the taking issue as it pertained to both the United States Constitution and the Florida Constitution. The appellate court decision expressly discusses under what conditions "(a)irport operations may result in a taking of private property within the constitutional meaning of the term 'taking'." *Fields I,* 512 So.2d at 964. The court noted the applicability of the United States Supreme Court decisions in *United States v. Causby,* 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946) and *Griggs v. Allegheny County,* 369 U.S. 84, 82 S.Ct. 531, 7 L.Ed.2d 585 (1962) along with federal and state court rulings construing those decisions. *Id.*

Clearly, Plaintiffs have had their takings claim fully litigated under both federal and state law. Their sole viable issue is not whether they were denied just compensation under the Fifth and Fourteenth Amendments, but whether the state courts applied the appropriate standard in determining that no taking had occurred. That issue is not within this Court's jurisdiction. As was explained in *Brown v. Chastain,* 416 F.2d 1012 (5th Cir.1969), *cert. denied,* 397 U.S. 951, 90 S.Ct. 976, 25 L.Ed.2d 134 (1970):

> If the constitutional questions stated in the ... [complaint] actually arose in the cause, it was the province and duty of the state courts to decide them; and their decision, whether right or wrong, was an exercise of jurisdiction. If the decision was wrong, that did not make the judgment void, but merely left it open to reversal or modification in an appropriate and timely appellate proceeding. Unless and until so reversed or modified, it would be an effective and conclusive adjudication. [Citations omitted] Under the legislation of Congress, no court of the United States other than this [the Supreme] Court could entertain a proceeding to reverse or modify the judgment for errors of that character. [Citations omitted] To do so would be an exercise of appellate jurisdiction. The jurisdiction possessed by the District Courts is strictly original. *Id.* at 415–416, 44 S.Ct. at 150.

*Brown,* 416 F.2d at 1013, *citing Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923). Plaintiffs' remedy is to pursue direct review in the Su-

preme Court of the United States. Accordingly, it is

ORDERED that Defendant's motion for summary judgment be granted, and the Clerk be directed to enter a final judgment of dismissal for Defendant in this case.

DONE and ORDERED.