579 So.2d 774 (1991)
Edward FOSTER and Mary Foster, His Wife; Clarence Quarles and Louretha Quarles, His Wife; Pearl Denise Young; Mike Williams and Victoria Williams, His Wife; and James Jackson, Appellants,
v.
CITY OF GAINESVILLE, a Municipal Corporation, Appellee.
No. 90-591.
District Court of Appeal of Florida, First District.
May 3, 1991.
*775 Norm La Coe, Gainesville, for appellants Foster, Quarles, Young, Williams, and Jackson.
B. Dale Thompson, Gainesville, for appellants Foster, Quarles, Young, and Williams.
Horace N. Moore, Gainesville, for appellant Jackson.
Celeste F. Adorno, Asst. City Atty., Gainesville, for appellee.
ZEHMER, Judge.
Edward and Mary Foster, Clarence and Louretha Quarles, Mike and Victoria Williams, Pearl Young, and James Jackson, all of whom were the plaintiffs below, appeal a final judgment of involuntary dismissal entered in favor of the City of Gainesville in their consolidated suits for inverse *776 condemnation.[1] Plaintiffs argue that the trial court could not properly dismiss their case in light of the evidence they presented at trial that the City's extension of an airport runway caused their property to decrease in value. We agree and reverse.
The plaintiffs own homes in the area of the Gainesville Regional Airport. In 1985, after the plaintiffs purchased their homes, the City expanded the airport by extending one of the airport runways toward the area of the plaintiffs' homes. As a result of this extension, air traffic increased and airplanes landing and taking off began flying directly over the plaintiffs' homes, sometimes as low as 220 feet above their property. The plaintiffs testified that the noise from the airplanes frightens them and their children and pets, interrupts their sleep, interferes with their television reception, and some of them testified that they and their children have suffered hearing damage. Residue from the airplanes covers everything in their yards and prevents them from hanging their clothes out to dry, cooking out, and gardening. Vibrations from the flights have caused a cracked window and a fan to separate from the ceiling in one of the homes. Several of the plaintiffs specifically testified that the runway extension had caused their property to decrease in value, and a real estate appraiser gave expert testimony that, as a result of the runway extension, all of the properties suffered a substantial reduction in market value. After the close of plaintiffs' case, the trial court concluded that plaintiffs "failed to present legally sufficient evidence to establish an adverse impact upon the market value of their property by any action of [the City]." On this basis, the court granted the City's motion for involuntary dismissal.
At the outset, we note that the same law is applicable to a motion for involuntary dismissal as is applicable to a motion for directed verdict. Curls v. Tew, 346 So.2d 1242 (Fla. 1st DCA 1977). Thus, if the plaintiffs presented competent, substantial evidence, even though conflicting, that, when considered in a light most favorable to them, established a prima facie case, the court was required to deny the motion. 346 So.2d at 1243. See also Day v. Amini, 550 So.2d 169 (Fla. 2d DCA 1989). Our inquiry, therefore, need go no further than determining whether plaintiffs established a prima facie case of inverse condemnation.[2]
The first case in Florida that recognized a cause of action for inverse condemnation based upon airport operations was City of Jacksonville v. Schumann, 167 So.2d 95 (Fla. 1st DCA 1964), cert. denied 172 So.2d 597 (Fla. 1965). In Schumann, this court extensively discussed and relied on United States v. Causby, 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946), Griggs v. County of Allegheny, 369 U.S. 84, 82 *777 S.Ct. 531, 7 L.Ed.2d 585 (1962), Martin v. Port of Seattle, 64 Wash.2d 309, 391 P.2d 540 (Wash. 1964), cert. denied, 379 U.S. 989, 85 S.Ct. 701, 13 L.Ed.2d 610 (1965), and Thornburg v. Port of Portland, 233 Or. 178, 376 P.2d 100 (Or. 1962), in reaching its decision to sustain a cause of action on this legal theory. Those cases hold that the property owner must establish a diminution in value to the property caused by the noise and vibrations of low-flying aircraft to establish an entitlement to inverse condemnation.[3]See Martin v. Port of Seattle, 391 P.2d at 546-547. Florida law is clear that in eminent domain proceedings[4] a property owner has an absolute right to place whatever value he chooses on his own property, and upon presenting competent evidence tending to establish such a value, a presumption arises that the property is in fact worth that amount. Wilkerson v. Division of Administration, etc., 319 So.2d 585 (Fla. 2d DCA 1975). See also 24 Fla.Jur.2d Evidence and Witnesses § 659 (1981) ("Ordinarily, an owner, by reason of ownership, is qualified to testify to the value of his own property."); Annot., 22 ALR4th 863, 872 (1983) ("The extent of the interference with reasonable use and enjoyment attributable to airplane noise may be established by the evidence of nonexpert witnesses describing the character and effect of the noise.").
In this case, the plaintiffs testified that the runway extension caused their property to decrease in value and illustrated the adverse impact the runway extension had on their property by testifying to the substantial problems created by the noise, vibrations and residue. This testimony was competent to prove that a decrease in the market value of the plaintiffs' property had occurred due to the runway extension, and thus established a prima facie case for plaintiffs in this action.
Plaintiffs also presented testimony of Otto Kampe, a real estate appraiser who had been an Air Force pilot and spent 10 years as an aircraft accident investigator. The court accepted Kampe as an expert in real estate appraisal. Kampe testified that he was asked by plaintiffs' counsel to start an appraisal assignment on the four properties in question and to proceed to the point where he could express an opinion on whether there was substantial damage to the properties as a result of the runway extension. His conclusion was that "all of these properties were substantially damaged, having substantial reduction in market value as a result of the runway extension." (R. 337). In reaching this conclusion, he considered noise vibrations and related nuisances and the altitude at which the planes flew over the property. He testified that all of the subject properties were within an unacceptable zone for V.A. or F.H.A. loans, and that the highest and best use of the property would be as a conservation easement, "certainly not for residential properties." (R. 358). He stated that he had not determined the actual market value of the properties, but that they were substantially reduced in value from before the time of the runway extension to the present time.
The court rejected Mr. Kampe's testimony on grounds that he had drawn a conclusion without offering the court any proof of how the conclusion was drawn. The court stated:
It had nothing to do with dollar amount. I could have cared less if he *778 had suggested what the value of the property was.
But if he had come in here and demonstrated that based upon comparative sales and offers, say ten warranty deeds in Alachua County, Florida, and demonstrated where the premise was in fact true, then I would have adopted his conclusion.
He has drawn a conclusion without offering this Court any proof of how that conclusion was drawn.
(R. 379).
The City argues that the case of Fields v. Sarasota-Manatee Airport Authority, 512 So.2d 961 (Fla. 2d DCA 1987), rev. denied, 520 So.2d 584 (Fla. 1988), supports the trial court's rejection of Kampe's testimony because he did not base his opinion on quantitative numerical evidence. The Fields case does not require "quantitative numerical evidence" to support the testimony of a substantial diminution in value of the property. In that case, the second district held that property owners had not proven entitlement to inverse condemnation because the most they had demonstrated at trial was a "decreased increase" of one percent in the value of their properties and it was "pure speculation whether the `decreased increase' was due to the airport operations or due to totally unrelated factors." 512 So.2d at 965. In this case, Mr. Kampe testified that plaintiffs' property had substantially decreased in value due to the airport extension, so Fields does not support the trial court's rejection of this testimony. Furthermore, we are aware of no Florida inverse condemnation case that requires the property owner to establish the exact diminution in value of his property due to the taking in order to obtain equitable relief. Once the court determines that an inverse taking has occurred, the amount of a property owner's damages sustained by reason of an inverse condemnation is determined in a separate proceeding for condemnation brought by the condemning authority.[5] In this case, Mr. Kampe provided competent, substantial evidence that a substantial diminution in the plaintiffs' property value occurred due to the runway extension, and the court erred in entering an involuntary dismissal of plaintiffs' case in light of that evidence.
The plaintiffs presented a prima facie case that the City effected a "taking" of their property that resulted in a substantial diminution in the value of that property. In view of this evidence, the trial court erred in granting the City's motion for involuntary dismissal. The case is reversed and remanded for further proceedings.
REVERSED AND REMANDED.
JOANOS, J., and CAWTHON, Senior Judge, concur.
NOTES
[1] Clarence and Louretha Quarles and Pearl Young also appeal an order denying their motion for continuance of the trial of their case made on the ground that they were unable to attend the trial because Louretha Quarles, who is Clarence's wife and Pearl's mother, suffered a severe stroke the night before the trial. Our reversal of the judgment of dismissal renders their appeal of this order moot.
[2] The object of plaintiffs' suit for inverse condemnation was to require the City to formally condemn their property. As such, plaintiffs requested an equitable remedy and the case was appropriately before the trial court in a non-jury proceeding. See Sarasota-Manatee Airport Authority v. Alderman, 238 So.2d 678 (Fla. 2d DCA 1970).

Generally, the only issues decided by the court in an inverse condemnation proceeding are: (1) whether the governmental agency has effected a taking; (2) the nature and extent of the property rights taken; and (3) the date of the taking, which is used for valuation purposes. If the court determines that a taking has occurred, a jury trial is held wherein the jury determines the amount of compensation to which the property owner is entitled. The valuation proceeding is to be held in accordance with chapters 73 and 74, Florida Statutes, and the process is the same as if the cause were a statutory eminent domain action. The Florida Bar Continuing Legal Education, Florida Eminent Domain Practice and Procedure (4th ed. 1988). See also Department of Agriculture and Consumer Services v. Mid-Florida Growers, Inc., 521 So.2d 101, 104 (Fla. 1988); Sarasota-Manatee Airport Authority v. Alderman, 238 So.2d 678; City of Jacksonville v. Schumann, 199 So.2d 727, 729 (Fla. 1st DCA), cert. denied, 204 So.2d 327 (Fla. 1967); 21 Fla.Jur.2d Eminent Domain § 136 (1980).
[3] The court in Martin v. Port of Seattle explained that the property owner in this type of action seeks no recovery for his individual suffering, damage, loss of quiet, or other disturbance; rather, recovery is based upon the injury to the market value of the property. 391 P.2d at 546. Thus, inverse condemnation may not afford complete relief to the "noise-harried" property owners since the only recovery will be damages for diminution in market value. Possible alternative remedies that may supplement the amount of recovery are claims for nuisance, negligence, or trespass. See generally Annot., 22 A.L.R.4th 863, 869 (1983).
[4] The Washington court in Martin v. Port of Seattle states that inverse condemnation proceedings differ from eminent domain proceedings only in that the landowner institutes the action, rather than the entity possessing the condemnation power. Also, the landowner instituting an inverse condemnation proceeding usually is claiming a partial taking rather than a total loss of the land itself. 391 P.2d at 546.
[5] See note 2, supra.