# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D2022-0039
_____

JENNIFER M. MATTINGLY and
CHARLES T. MATTINGLY,

     Appellants,

     v.

LISA HATFIELD,

     Appellee.

_____


On appeal from the Circuit Court for Leon County.
Barbara K. Hobbs, Judge.

July 3, 2024

ON MOTIONS FOR REHEARING AND REHEARING EN BANC

WINOKUR, J.

We deny Appellants' motion for rehearing en banc, grant Appellants' motion for rehearing, withdraw our opinion docketed February 28, 2024, and substitute the following in its place.

This appeal arises out of the parents' attempt to block a grandparent's visitation with their minor child. The parents challenge several trial court rulings in five issues raised on appeal. On rehearing, the parents argued the trial court did have the authority to modify a previous Kentucky child custody determination. Although we agree with the parents on this point

of law, we write to explain why we are affirming the judgment dismissing the petition to modify grandparent visitation.

I

Appellants Jennifer M. Mattingly ("Mother") and Charles T. Mattingly ("Father") are the biological parents of E.M.M, born in Kentucky, where all parties lived in February 2009. Appellee Lisa Hatfield ("Grandmother") is the maternal grandmother of E.M.M. The litigation began in Kentucky.

The relationship between the Mother and Grandmother was deteriorating by 2013. At that time, the family still lived in Kentucky and recognized a "tradition" of Wednesday evening visitations between the Grandmother and E.M.M. When the Mother stopped allowing these visits, the Grandmother petitioned for grandparent visitation in Kentucky.

In 2014, the Kentucky trial court granted the Grandmother's petition and ordered visitation for several specific time periods. To support its order, the Kentucky court found by clear and convincing evidence that grandparent visitation was in E.M.M.'s best interests because the Grandmother was E.M.M.'s primary babysitter and they spent a substantial amount of time together. Then, in 2016, the Mother and Father moved to Florida with E.M.M. In response to the relocation, the parties entered into an "Agreed Supplemental Judgment" ("2016 Kentucky visitation order") that amended the Grandmother's visitation to reflect the changed circumstances.

The Grandmother, however, continued litigating the visitation order in Kentucky after the parents moved to Florida with the child. Eventually, the Kentucky court held the parents in contempt for failing to comply with certain terms of the modified visitation order, culminating in the parents' incarceration.

While the allegations that led to multiple contempt orders were being litigated in Kentucky, the parents attempted to register the 2016 Kentucky visitation order; however, the Second Judicial Circuit Court in Leon County, Florida, refused to register the foreign judgment because the Kentucky court was continuing to

2

exercise its exclusive jurisdiction over E.M.M.[1] The Florida court found that the Kentucky court had rejected the parents' claim that Kentucky was an inconvenient forum. Though the Grandmother initially opposed the parents' petition to register the 2016 Kentucky visitation order, she eventually filed her own request for registration. Shortly thereafter, the Grandmother filed another petition to enforce the 2016 Kentucky visitation order in Florida court, which included a request that the trial court direct the Leon County Jail to relinquish jurisdiction of the Mother to the Nelson County Sheriff's Office in Kentucky.

In 2018, the Kentucky court entered an "Agreed Order" ("2018 Kentucky visitation order"). This order did not substantially change the Grandmother's visitation schedule. Instead, the 2018 Kentucky visitation order incorporated the grandparent visitation schedule set out in the 2016 Kentucky visitation order and awarded make-up time-sharing to the Grandmother. The order further stated the parties' agreement that any party could domesticate the 2018 Kentucky visitation order in Florida. On that same day, the Grandmother filed a request to register the 2018 Kentucky visitation order in Florida.

Approximately one year later, the parents filed a petition for dissolution of marriage. When the parents entered into a marital settlement agreement that divested the Grandmother of visitation, the Grandmother moved to intervene. She claimed a direct interest in the proceeding because she had been actively involved in E.M.M.'s life and exercised time-sharing pursuant to the Kentucky visitation orders. She further argued that the petition for dissolution of marriage was a "sham" action.

Around this time, the parents moved to establish exclusive jurisdiction in Florida. The court ruled that "[a]ny visitation rights that the grandparent had in the Kentucky order can be enforced in Florida . . . ." The court also granted the Grandmother's motion to intervene.

---

[1] The parties often use the term "domesticate" to describe the efforts to file the Kentucky order in a Florida court, but "register" is a more appropriate term. *See* § 61.528, Fla. Stat.

A final judgment of dissolution was entered in October 2020, and a parenting plan between the Mother and Father was established. By amended judgment, the trial court further ordered that the Grandmother's visitation rights would continue to be enforced until modified by the court.

The parents immediately sought complete elimination of the Grandmother's court-ordered visitation, by filing a petition to "modify" the visitation, alleging multiple substantial, material, and unanticipated changes in circumstances in support of modification. The Grandmother filed a motion to dismiss the petition, in which she argued that the parents failed to demonstrate such a change.

In June 2021, the 2018 Kentucky visitation order was registered, and the parents filed an "Amended Supplemental Petition for Modification of Grandparent Visitation." The parents alleged ten substantial, material, and unanticipated changes in circumstances.

A final hearing was held in December 2021. In their case-in-chief, the parents testified to their divorce and resulting time-sharing arrangement. The Mother submitted that the divorce was substantial and material because the parents now live in separate households. While the Mother was a stay-at-home parent prior to the divorce, by the time of the hearing, she maintained a full-time job outside of the home.

The Mother further stated that she did not anticipate the parents' divorce "until right around the time [she] filed for it." She explained that her earlier comments, which may have implied that the parents were going to get divorced, were made out of anger. When asked if she "repeatedly told the Kentucky court that [the parents] were getting divorced," the Mother answered: "No." She stated that she felt that her marriage "was going well" when the 2018 Kentucky visitation order was entered. The Father, on the other hand, never mentioned a divorce. He stated that he was not even aware that the Mother made such comments. However, the parents admitted to fighting over the financial burden and the stress caused by the overall litigation.

4

As for the parents' post-divorce time-sharing arrangement, the parents testified to their separate households and the diminished time that each parent gets to spend with E.M.M. as a result. The Mother has custody of E.M.M. during the week and the Father has custody during the weekends. The Father attempted to rectify the visitation issues between the Mother and the Grandmother by allowing the Grandmother to visit with E.M.M. during his parenting time. However, the Grandmother was not satisfied because the Father's parenting time alone did not allow for the total amount of visitation to which the Grandmother was entitled.

After the parents rested, the Grandmother moved for involuntary dismissal. She argued that the parents had not met their burden of showing a substantial, material, and unanticipated change in circumstances. The parents countered that, while the Grandmother's interference in their parenting has been ongoing for years, their parenting decisions have evolved as E.M.M. grew older. They also submitted that a divorce and resulting time-sharing arrangement was "as good [of a substantial change] as it gets."

The trial court dismissed the parents' petition for modification of grandparent visitation. In the final judgment, the trial court explained its reasoning as follows:

> Although the parents now live separate lives and the minor child rotates between their two houses pursuant to a parenting plan, the mother has previously advised the Court in Kentucky, prior to 2018, that the stress of grandparent visitation would likely lead to the parents' divorce. The divorce of the parents was not unanticipated and is not material in nature. The court finds that there is no reason why the parents' divorce should impact the grandmother's court-ordered visitation.

This appeal follows.

II

A

The right to grandparent visitation is far broader in Kentucky than it is in Florida. *Compare* Ky. Rev. Stat. § 405.021, *with* § 752.011, Fla. Stat. In Kentucky a grandparent may be granted visitation rights as long as a court "determines that it is in the best interest of the child to do so." Ky. Rev. Stat. § 405.021(1)(a). This statute apparently permits a grandparent to obtain an order forcing even married parents who both live with their child to surrender the child to the grandparent against their wishes, as happened here. This procedure appears to have made a strained relationship worse, resulting in court orders defied by the parents, which in turn resulted in the Grandmother having her own daughter and son-in-law thrown in jail.

The Kentucky policy regarding grandparent visitation rights plainly conflicts with Florida's.[2] Florida's supreme court has interpreted our state constitution to include "a natural parent's right to rear his or her own child" without "unwarranted governmental interference." *Richardson v. Richardson*, 766 So. 2d 1036, 1043 (Fla. 2000). Applying this principle, the supreme court repeatedly has invalidated statutory provisions that give some preference to grandparent visitation rights that interfere with a parent's "longstanding and fundamental liberty interest of parents in determining the care and upbringing of their children free from the heavy hand of government paternalism." *Beagle v. Beagle*, 678 So. 2d 1271, 1275 (Fla. 1996) (citing *Padgett v. Dep't of Health & Rehab. Serv.*, 577 So. 2d 565, 570 (Fla. 1991)). The supreme court

---

[2] There was a time when Florida's law was similar to Kentucky's, allowing a court to "award the grandparents visitation rights of a minor child if it is deemed to be in the child's best interest." § 61.13(2)(b)2.c., Fla. Stat. (2004). But over time, as noted herein, grandparent visitation laws have been curtailed. Like the other statutory provisions regarding grandparent visitation noted herein, this specific statutory provision was declared unconstitutional. *Sullivan v. Sapp*, 866 So. 2d 28 (Fla. 2004).

has enforced this interest through the Florida Constitution's privacy guarantee.

Accordingly, a statute permitting a court to award visitation rights to a grandparent, even when the minor is living with both natural parents who are still married, and based only on the best interest of the minor child, has been held unconstitutional. *Beagle*, 678 So. 2d at 1276*; see also Von Eiff v. Azicri*, 720 So. 2d 510, 514 (Fla. 1998) (holding another provision permitting grandparent visitation when one or both parents are deceased, based solely on the best interest of the minor child, without first requiring proof of demonstrable harm to the child, was unconstitutional); *Saul v. Brunetti*, 753 So. 2d 26, 28–9 (Fla. 2000) (reaching the same conclusion with respect to a provision permitting grandparent visitation when the child was born out of wedlock). In *Richardson* our supreme court struck down a statute that permitted a court to "recognize the grandparents as having the same standing as parents for evaluating what custody arrangements are in the best interest of the child," finding it a violation of parents' state constitutional right to rear their children. 766 So. 2d at 1038. But in spite of this recognized right, it is not for us to question the wisdom of either the Kentucky grandparent visitation law or the Kentucky court orders granting it to the Grandmother. This is a consequence of the Full Faith and Credit Clause of the United States Constitution. Specifically, the supreme court has recognized that the out-of-state orders awarding grandparents child visitation are entitled to enforcement under the Full Faith and Credit Clause. *Ledoux-Nottingham v. Downs*, 210 So. 3d 1217, 1221 (Fla. 2017). This brings us to the case before us.

B

The parents argue that the trial court committed several errors in dismissing their petition to modify the 2018 Kentucky visitation order. We review the trial court's dismissal de novo. *See Korkmaz v. Korkmaz*, 200 So. 3d 263, 265 (Fla. 1st DCA 2016); *Alence v. Matheson*, 351 So. 3d 1265, 1269 (Fla. 2d DCA 2022) (quoting *Mendez v. Mendez Lopez*, 271 So. 3d 72, 73 (Fla. 3d DCA 2019)).

When considering the involuntary dismissal of a petition for a custody modification we consider the same law that is "applicable to a motion for directed verdict." *Foster v. City of Gainesville*, 579 So. 2d 774, 776 (Fla. 1st DCA 1991) (citation omitted). "Thus, if the [parents] . . . established a prima facie case, the court was required to deny the motion." *Id.* (citations omitted). When determining if a prima facie case was made, the facts are viewed in the light most favorable to the parents. *Id.*

C

"In seeking a modification of custody, the movant must show both that the circumstances have substantially, materially changed since the original custody determination *and* that the child's best interests justify changing custody." *Ogilvie v. Ogilvie*, 954 So. 2d 698, 700 (Fla. 1st DCA 2007) (citation omitted). The parents, however, argue that this case does not deal with E.M.M.'s custody. We disagree.

In their amended petition, the parents asked the trial court to "Enter a Supplemental Order Modifying the current Order of this Court permitting grandparent visitation, and replace it with the parenting plan agreed to by the parents, which entirely removes the grandparent visitation[.]" In seeking the modification of the trial court's previous judgment of dissolution and parenting plan, the parents were, in effect, asking the trial court to make a child custody determination. *See* § 61.046(14)(c), Fla. Stat. ("For purposes of the Uniform Child Custody Jurisdiction and Enforcement Act, part II of this chapter, a judgment or order incorporating a parenting plan under this part is a child custody determination under part II of this chapter."). Thus, the parents had to satisfy the burden of modifying a custody determination. They failed to do so.

The parents argued that their divorce was the substantial and material change in circumstance that warranted the modification of the custody order to remove the Grandmother's visitation. But we previously held that "the substantial change must be one that was not reasonably contemplated at the time of the original judgment." *Cooper v. Gress*, 854 So. 2d 262, 267 (Fla. 1st DCA 2003). The trial court utilized the 2018 Kentucky order as the

8

"original" judgment to determine if the divorce was a substantial and material change, rather than the dissolution judgment. Even if we considered the 2018 Kentucky order the original judgment, we conclude that competent, substantial evidence supports the trial court's finding that "[t]he divorce of the parents was not unanticipated and is not material or substantial in nature[,]" and that "there [was] no reason why the parents' divorce should impact the grandmother's court-ordered visitation." And because modification was not warranted in this case, we may end the inquiry there. *See Ogilvie*, 954 So. 2d at 700 (holding that only if modification is warranted does a court need to consider the best interest of the child prong).

Even if we agreed that the divorce *was* a substantial and material change since the 2018 order, we are still obligated to affirm because the parents failed to present any evidence that the modification was in the best interest of E.M.M. *See cf. Holland v. Holland*, 140 So. 3d 1155, 1157 (Fla. 1st DCA 2014) (reversing the modification of a time-sharing agreement because the trial court did not make findings as to the best interest of the child).[3]

Accordingly, we affirm the trial court's judgment dismissing the parents' amended petition to modify the Grandmother's visitation.

AFFIRMED.

TANENBAUM, J., concurs; ROBERTS, J., dissents.

---

[3] In reaching this conclusion, we recognize that the parents argued that the court erred in excluding evidence they claim could have established that the child's best interests would be served by a modification. We reject that argument as well.

9

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

Susan J. Silverman, Sarasota, for Appellants.

Linda A. Bailey of the Law Office of Linda A. Bailey, P.A., Tallahassee, for Appellee.