408 So.2d 782 (1982)
Brenda Ann CULPEPPER, Appellant,
v.
James William CULPEPPER, Appellee.
No. 81-1330.
District Court of Appeal of Florida, Second District.
January 13, 1982.
*783 Rick S. Lockenbach of Bay Area Legal Services, Inc., New Port Richey, for appellant.
Norman Johnson Stewart, Jr. and W. Lowell Bray, Jr. of Allgood, McPherson, Stewart, Bray & Misemer, New Port Richey, for appellee.
GRIMES, Judge.
This is an appeal from an order changing the custody of the parties' minor child.
During their marriage Mr. and Mrs. Culpepper had one child, Alan, who was born on August 23, 1975. Subsequently, they divorced on March 26, 1977. The judgment of dissolution incorporated a settlement agreement which gave custody of Alan to Mrs. Culpepper with Mr. Culpepper having the right to reasonable visitation. On June 20, 1980, Mr. Culpepper filed a petition for modification of custody. Following a hearing, the court directed that he have permanent custody of the child.
In order to properly decide the case, it is necessary to consider the facts in depth. Mrs. Culpepper testified that she had been the sole custodial parent of Alan except for a few weeks when she was suffering from the complications of a pregnancy which resulted in the birth of a child, Dawn, out of wedlock, on March 28, 1980. She said that later in 1980 for several months Alan had visitation with his father from Wednesday until Sunday of each week. These arrangements ceased, and the visitation was changed from Friday to Sunday when Alan transferred from a parochial school for which his father paid to a public school closer to Mrs. Culpepper's home.
Mrs. Culpepper testified that she had begun working as a cashier at a convenience store in February 1981 and had since been promoted from clerk to assistant manager. She said that because of her employment she was able to take care of her children's material needs including insurance. She worked from 6:00 a.m. to 4:00 p.m. two days a week and from 3:00 p.m. to 11:00 p.m. three days a week. She lived in a three bedroom mobile home with her two children, her mother, and her nine year old sister. She stated that either her mother or a girl friend who also had a child took care of Alan and Dawn while she was working.
Mrs. Culpepper admitted that for one month during the year prior to the hearing, she had allowed an unmarried man to live in the mobile home with his daughter because he had lost his lease and had nowhere to go. She denied having sexual relations with him. She also denied ever having an abortion. Finally, she stated that she was engaged in no regular activities other than her work and caring for her family.
Mrs. Culpepper's mother testified that she had resided with her daughter since the end of January 1981, that they shared expenses equally, and that Mrs. Culpepper had been well able to provide for the material needs of her son. She also spoke of the affection between Alan and his sister Dawn.
Mr. Culpepper testified that he had exercised primary custodial care of Alan for a month during the time of Mrs. Culpepper's pregnancy complications. He said he changed jobs recently and now worked for Paradyne Electronics. He stated that if he were granted custody, his parents would be *784 in a position to take care of Alan when he was absent at his work. He admitted that when he had been in the service, he sometimes did not provide total support because of his neglect to fill out dependency allotment papers. He also admitted to having habitually used marijuana in the past, sometimes in Alan's presence. However, he said he had given this up and had not smoked marijuana for over a year. Finally, he testified that Mrs. Culpepper had told him that at some time she had an abortion.
Debra West, a counselor for the Department of Health and Rehabilitative Services who was responsible for preparing a home study in the case, was qualified as an expert in child welfare. She testified that when she did her study, the Wednesday-Sunday visitation was in effect. Thus, she had recommended "split custody" in her home study report. She said, however, that because this visitation had changed so that Mr. Culpepper was seeing his son considerably less hours of the week, she would now recommend that Mrs. Culpepper remain the primary custodial parent. She gave as reasons for her recommendation that she favored continuity and believed that Alan was looking to his mother as the custodial parent. She said she had no reservations concerning Mrs. Culpepper's suitability as a parent because the child was receiving more than adequate care and Mrs. Culpepper's mobile home was a satisfactory residence. She testified that she believed that Mrs. Culpepper was maturing and that her goals were to provide Alan and Dawn with a stable and secure home environment. She also stated that Mrs. Culpepper had exercised sound judgment on behalf of her children in deciding not to change jobs because the longer hours would not be in the children's best interest. She said that she found Alan to be very loving and attached to his mother and his half sister.
Ms. West also testified that Mr. Culpepper and Alan were very attached to each other and that Alan felt very secure in his father's presence. She said that Mr. Culpepper was an excellent father who had a stable and secure home environment with his parents. She noted that he was a hard worker with a well planned future. Her home study disposition report which was filed with the court was complimentary of both parents.
This case comes to us with certain legal principles favoring the position of each party. In support of affirmance, it is well settled that the trial judge has broad discretion in matters of custody. Grant v. Corbitt, 95 So.2d 25 (Fla. 1957). A custody order on appeal carries a presumption of correctness which should not be disturbed absent a showing of an abuse of discretion. In re Gregory, 313 So.2d 735 (Fla. 1975). On the other hand, a court does have less discretion in modifying the custody provisions of a final judgment of dissolution than in making the original custody determination. Garvey v. Garvey, 383 So.2d 1172 (Fla.2d DCA 1980). Before the court can change custody, the evidence must show that there has been a substantial change in the conditions of the parties and that the best welfare of the child will be promoted by the court's action. Sanders v. Sanders, 376 So.2d 880 (Fla. 1st DCA 1979), cert. denied, 388 So.2d 1117 (Fla. 1980). An improvement in the circumstances of the noncustodial parent by itself does not warrant modification. Collins v. Newton, 362 So.2d 174 (Fla. 2d DCA 1978).
In this case, the only change of real consequence occurred when Mrs. Culpepper had an illegitimate child. The moral unfitness of a party may be considered in a custody case so long as it has a direct bearing on the welfare of the child. Dinkel v. Dinkel, 322 So.2d 22 (Fla. 1975). Here, however, admitting the immorality of having a child out of wedlock, there is still no evidence that it adversely affected five year old Alan. In fact, the record reflects a marked degree of affection between the two young children. In ordering the change of custody, the judge alluded to a certain lack of stability in Mrs. Culpepper and referred to the caseworker's comment that she had been going through a period of transition. Ms. West did mention a transition period in Mrs. Culpepper's life in her *785 report, but the transition to which she referred was for the better. She also said that Mr. Culpepper was going through a favorable transition.
It is obvious that both parties are fit persons to have custody of their child. However, when the child was very young, the judgment of dissolution gave him into the custody of Mrs. Culpepper, and he has lived with her as the primary custodial parent ever since. There is no evidence that Alan has been adversely affected in any way by Mrs. Culpepper's conduct. Consequently, Mr. Culpepper has simply failed to meet his burden of proving the substantial change of circumstances necessary to justify the modification of custody.
REVERSED.
BOARDMAN, A.C.J., and DANAHY, J., concur.