444 So.2d 1038 (1984)
Joseph D'AMICO, Appellant,
v.
MARINA INN & YACHT HARBOR, INC., & Aetna Insurance Co., Appellees.
No. AT-75.
District Court of Appeal of Florida, First District.
January 18, 1984.
L. Barry Keyfetz, of Keyfetz, Poses & Halpern, Miami, for appellant.
*1039 Anthony J. Beisler, Fort Lauderdale, for appellees.
WENTWORTH, Judge.
The claimant in this workers' compensation case appeals an order denying his claim to set aside a September 23, 1981 order which had approved a lump sum settlement agreement between claimant and the carrier. Because the record permits only a conclusion that maximum medical improvement (MMI) had not been reached six months prior to the settlement, we reverse.
Claimant suffered a herniated disc in the course and scope of his employment on March 14, 1980. The employer and carrier (e/c) paid temporary total benefits until August 16, 1980, when they were terminated on the asserted ground that claimant had refused to undergo recommended surgery and was therefore at MMI. There is some indication that the delay in surgery was due in part to the treating physician's concerns regarding claimant's weight problems, and while claimant apparently was reluctant to have the surgery, we find no record substantiation that he had in fact refused any unequivocal medical recommendation for surgery for a specific time before the settlement. In any event, after claimant employed an attorney who filed wage loss claims on his behalf, on October 6, 1980, the e/c commenced paying total wage loss benefits retroactive to August 16, 1980.
In June, 1981, the carrier authorized treatment at the Siegal Clinic for weight loss. Claimant lost approximately twenty five pounds in a very short time, and entered Florida Medical Center in late July with chest pains. These symptoms were subsequently determined to be the result of a chemical imbalance in claimant's blood caused by the rapid weight loss and the hospitalization was accepted as compensable by the carrier. In an August 21, 1981 report, Dr. Lane stated that due to claimant's weight loss he was ready to have a myelogram and possible laminectomy.
Less than a week before September 21, 1981, claimant called the carrier's attorney, told him that he was frustrated and aggravated with the handling of his case,[1] and indicated that he wanted to settle it for $10,000. The attorney promptly drew up a stipulation of settlement and a hearing was held on September 21, 1981. After questioning claimant regarding his motives for wishing to settle, and pointing out to him that his benefits could amount to substantially more than $10,000, Deputy Commissioner Seppi approved the settlement. In doing so, he signed a form order which contains a printed statement that "the claimant reached maximum medical improvement more than six (6) months prior to the date the undersigned Deputy Commissioner entertained said lump sum settlement." After securing the services of a new attorney, claimant filed a claim on July 14, 1982, seeking to have the settlement set aside.
In his order denying the claim to set aside the settlement, Deputy Commissioner Branham found, among other things, that the record supported a determination that MMI had been reached six months prior to the hearing on the stipulation. Although § 440.20(12)(b) provides that an order approving a lump sum settlement "shall not be subject to modification or review," appellee does not in this appeal challenge Deputy Branham's right to review and determine the question of whether MMI had been reached six months prior to the settlement hearing. Based on the language in § 440.20(12)(a), pertaining to the approval of lump sum settlements, we agree that review of the issue was proper in this case.[2] That section provides in pertinent part that:
In no case shall a lump sum payment be allowed until six months after the date of *1040 maximum medical improvement has been reached.
The quoted language is plainly mandatory in character.[3] The absence of a proper record basis for the required time lapse results, in our opinion, in a voidable order. See Ferrand Corp. v. McKenney, IRC Order 2-3324 (1977); cf., Keith v. City of Altamonte Springs, 344 So.2d 555 (Fla. 1977).
Upon the merits of the medical issue, however, we can find no support in the record before Deputy Branham for his determination that the statutory condition had been met. The order on appeal on this point is as follows:
The claim that the order should be set aside because the Claimant had not reached maximum medical improvement six months prior to the settlement is denied. At the settlement hearing, it was represented to the Deputy Commissioner that the Claimant had reached maximum medical improvement more than six months prior to the hearing (Transcript of Hearing, P-5). This fact was borne out by the deposition of the Claims Representative, Jan Mathiesen, who relied on reports from Dr. Krulik and Dr. Reiman (depo 16-21) when she took the position that the Claimant had reached maximum medical improvement on August 15, 1980. Of course, a myelogram and surgery had been recommended to the Claimant but, at this point, he had turned them down. The issues involved herein must be resolved upon the facts as they existed at the time the settlement was approved. At that time, it would seem obvious that the Deputy Commissioner considered that the Claimant had reached maximum medical improvement (without surgery) more than six months prior to the hearing or he would not have approved the settlement. This order was entered under the provisions of F.S. 440.20(12)(a) & (b) and is not subject to modification for `change of condition' or `mistake in a determination of fact'. For this reason, circumstances which may have occurred subsequent to the entry of this order are not material.[4]
The stated conclusions are patently irreconcilable with the actual circumstances, hereinabove noted and appearing in the settlement hearing transcript, including the fact that claimant was undergoing remedial treatment at the Siegal Clinic in June 1981, approximately three months prior to the settlement; that the parties contemplated continuing treatment and there was renewed hope for surgical repair as demonstrated by Dr. Lane's report; and that the e/c's attorney conceded the question of future remedial treatment to be a live issue between the parties.[5] In short, the evidence *1041 at the time of the settlement hearing was that MMI had not been reached more than six months previously, but even if that could have occurred at some point the condition had not subsisted for the six months preceding settlement.[6]
Because we find that the settlement agreement was voidable for failure to comply with the statutory requirement that approval be deferred for six months after the date of MMI, we do not consider the question of whether there was fraud or overreaching on the part of the e/c. The order denying the claim to set aside the settlement is reversed and this case is remanded for further proceedings consistent herewith.
NIMMONS and ZEHMER, JJ., concur.
NOTES
[1] At that time, claimant was no longer represented by an attorney and he claimed to have been harassed by the Siegal Clinic and Medical Center as to unpaid bills.
[2] We note that the claim to set aside the settlement was filed within two years of the order approving it. We therefore do not consider the applicability of § 440.19(2)(a) to such a claim.
[3] The provision in question follows immediately another sentence by which the statute was also amended to state that "In no case shall a lump-sum payment be allowed in exchange for the release of an employer's or carrier's liability for future medical expenses."
[4] None of the referenced medical reports appear in the record. Other reports were excluded upon objection by carrier to claimant's proffer before Deputy Branham, upon grounds that made further proffer futile.
[5] The transcript reflects colloquy as follows:

THE DEPUTY: Have you made arrangements for the pain pills?
MR. MORCROFT: No Judge. He is actually under the care of Dr. Lane, and I don't know what arrangements have been made. One of the reasons that we are bringing this to you is that he has indicted to me that he wants to move back to New York, and obviously arrangements will have to be made for a treating physician in New York. All right. That's the first point.
The second point is that  just for the record  maximum medical improvement was reached over six months ago on this case. In fact, the reports in the file indicate it was in July of 1980.
THE DEPUTY: He would begin now on a palliative basis?
MR. MORCROFT: Well, I guess that's an issue or could be an issue. There is a situation where there is a questionable disc, and Dr. Lane had talked about doing a myelogram, and we had not had a myelogram done. I don't think Mr. D'Amico is very anxious to have one as long as he is able to get by in his present state.
.....
THE WITNESS: That's why I went on a diet. Did he explain that to you? I went on a diet.
.....
Q. Well, this is the reason why I am telling you 
.....
Q.  that if I approve this settlement, this is the end of your compensation, but you are not ending your case as far as your medical benefits are concerned.
A. Yes. I understand that.
[6] The record does not reflect whether claimant will refuse surgery in light of the referenced report of Dr. Lane.