642 So.2d 800 (1994)
Kristy L. KELLY, Appellant,
v.
Richard A. KELLY, Appellee.
No. 93-04283.
District Court of Appeal of Florida, Second District.
September 14, 1994.
Richard A. Weis, Tampa, for appellant.
Ky M. Koch, Clearwater, for appellee.
DANAHY, Acting Chief Judge.
Kristy L. Kelly, the mother, appeals from the trial court's postdissolution order changing the primary residential custody of the parties' minor daughter, Laura, from the mother to the father, Richard A. Kelly. We reverse because the trial court modified Laura's primary residential custody upon insufficient evidence of a substantial and detrimental change in circumstances.
*801 The parties divorced when Laura was three weeks old. The mother received primary residential custody of Laura pursuant to the parties' agreement, and the court further ordered shared parental responsibility. When Laura was ten months old, the father petitioned to have her primary physical residence changed to him. The trial court subsequently denied this petition. The father attempted to modify primary physical residence a second time when Laura was two years and eight months old. It is the order granting this second petition which we review in this appeal.
The father presented evidence that since the denial of his first petition to modify primary residential custody the mother had moved five times, had changed jobs five times, had failed to attend needed counseling sessions, had failed to advance her education, that communication between the parties was a difficult problem, and that the mother's live-in boyfriend was profane, verbally abusive, and threatening in the presence of the child. The father testified that the boyfriend often dropped Laura off for visitation and exhibited profane behavior as well as verbally abusive language at that time. The father also alleged that the child had suffered difficulties, such as sleep and chronic digestive disorders, and was no longer happy and well-adjusted in the primary physical custody of her mother. To support this last allegation, he testified that the three-year-old child was reluctant to return to her mother's home after visitation with the father, refused to sleep alone in her own room anymore, and would hide under a table when a stranger entered their home.
In rebuttal, the mother explained that her numerous moves were necessitated by work and school schedules, and that two of the five "moves" were, in reality, one-week to two-week stays with her parents while her living accommodations elsewhere were being prepared. The first move was out of the boyfriend's home at the time she severed their relationship. She severed the relationship because she realized the detrimental effect it was having on Laura. The next move was to an apartment near the University of South Florida so she could attend school; a cousin of the mother's also lived there and provided babysitting services for Laura while the mother attended classes. The mother's last move was to a home which she purchased and in which she continued to reside with Laura at the time of the final hearing. Similar to the father's testimony about Laura being reluctant to leave his home to return to her mother's, the mother testified that on several occasions Laura was reluctant to leave her home to go to the father's for a scheduled visit. At the time of the final hearing the father had Laura with him from Thursday at 4:00 p.m. to Saturday at 10:00 a.m. one week and on the alternate week from Thursday at 4:00 p.m. to Sunday at 4:00 p.m.
Both parties also presented expert evidence of the need for counseling between the parents because of their great difficulty in communicating to each other about Laura's needs and their common interest in her. The father's expert psychological witness, Dr. Carra, testified that she did not find Laura as happy and well-adjusted as she had at the time she did the evaluation for the first petition. Dr. Carra ascribed the cause of this to Laura's awareness and reaction to the tension and problems between the parents. The psychologist also testified that Laura was confused about exactly where she lived and not sure about who her caretakers were. There was no question that both parents, individually, had a loving and extremely close bond with Laura and there was no evidence that either one of them was an unfit parent.
The trial court in its ruling at the hearing discussed the evidence it heard and commented on it in several respects. The most important aspect of the ruling, as stressed by the court, was the need for stability in Laura's life. The court also found that the parties had been litigating so much since the divorce that it was interfering with the mother's pursuit of her degree. The court said that the mother's failure to complete her undergraduate education was not an important fact that it considered in deciding the case. The frequency of the mother's residential moves concerned the court even though it noted some were certainly very temporary. *802 This factor clearly weighed on the court because of the need for stability in the child's life. The court found that both parties were at fault for not completing counseling to improve communication between them. The court cited as a problem the mother's involvement with the boyfriend but commended her on her early recognition of the problem and solving it by moving out of his house and their relationship. The court did not give the factor of the child's reluctance to go from one home to the other very much weight because this was typical behavior for a three-year-old child. The court concluded that it would be appropriate at this point in the child's life to change her primary residence from the mother to the father but that the mother should have significant time with Laura, i.e., 72 hours per week, as well as alternating holidays.
We find that the trial court abused its discretion in changing primary residential custody of Laura from the mother to the father. The court's discretion in ordering a modification of a child's primary residence is much more restricted in a modification proceeding than the broader discretion it possesses when making an initial determination. Grumney v. Haber, 641 So.2d 906 (Fla. 2d DCA 1994); Jablon v. Jablon, 579 So.2d 902 (Fla. 2d DCA 1991). The father here failed to carry his "extraordinary burden" of proving a substantial change in circumstances such that Laura's continued primary residence with her mother will be detrimental to her and that changing her primary residence to her father is in her best interests. Jablon, 579 So.2d at 903; Eddy v. Napier, 558 So.2d 199 (Fla. 2d DCA 1990); Ours v. Ours, 515 So.2d 281 (Fla. 1st DCA 1987). We note that this is especially so in light of the court's order here which merely switches the almost equal time Laura is to spend with each parent. There was no evidence that the mother was not meeting Laura's needs. The residential moves made by the mother since the previous petition do not, by themselves, constitute sufficient reason to change primary residential custody. See Ours. The evidence at the hearing was that the mother had begun a more secure and permanent living arrangement by purchasing her own home for the two of them to live in. Neither expert related any of Laura's behavioral problems to the mother's conduct. Indeed, the father's expert believed it was Laura's sensitivity to the problems between the parents which was causing her behavior, if it was not merely a phase she was going through. In the absence of evidence that the custodial parent caused a child's emotional problems, it is error to change custody. Grumney; Shelly v. Shelly, 480 So.2d 166 (Fla. 1st DCA 1985), review denied, 491 So.2d 280 (Fla. 1986). Finally, there was no evidence whatsoever that Laura's continued primary residence with her mother would be detrimental to her or that removing her from that home would be in her best interests.
We sympathize with the trial court in its difficult role in choosing between two competing parents as presented by the evidence in this case. The evidence supports the trial court's conclusion that both parents were loving and considerate parents, deeply involved with Laura, and able to provide a good home for her. This case has that sad but all too usual scenario of the troubles that a child of tender years displays when the parents are unable to resolve, amicably, the conflicts between them. However, the evidence presented does not support the court's legal conclusion that the father met his extraordinary burden in this situation.
Reversed.
PATTERSON and QUINCE, JJ., concur.