707 So.2d 778 (1998)
Charlana M. BLOSSER, n/k/a Charlana MacCarreall, Appellant,
v.
Henry BLOSSER, Appellee.
No. 96-03534.
District Court of Appeal of Florida, Second District.
January 9, 1998.
Rehearing Denied February 11, 1998.
*779 Sandra A. Sutliff, Port Charlotte, for Appellant.
Vincent A. Sica of Brown, Waldron & Carlton, Arcadia, for Appellee.
DANAHY, Acting Chief Judge.
This appeal is from a postdissolution order modifying primary residential custody of the parties' child from the appellant [Mother] to the appellee [Father]. Mother contends that there was insufficient evidence to conclude that a substantial change in circumstances had occurred since the initial custody determination in the final dissolution judgment. We agree with Mother and, accordingly, reverse.
In December 1993 the parties' marriage was dissolved. Their separation agreement, incorporated into the final judgment, provided that Mother would be the primary residential parent of their only child, a daughter, born in November 1991. Father received liberal visitation rights. In November 1995 Father petitioned for modification to change primary residential custody of the child to him. Father's modification petition alleged that Mother was, at the time of the petition, unmarried and pregnant with her second child, the father of whom was not then involved in supporting Mother either emotionally or financially. Father also claimed in his petition that Mother had moved several times since dissolution and that their daughter was not bathed or clothed properly while in Mother's care. He also alleged that he had remarried, rented a condo, and was thus more able to provide a stable home for his daughter based on these improvements in his lifestyle since dissolution. Early in the proceedings Father also sought temporary relief which the trial court granted giving residential custody of the child to Father during the pendency of the action.
The trial court held an evidentiary hearing at which the parties presented the following evidence. Since dissolution, Father, now age 24, had several job changes but was now settled into a position with the Charlotte County Sheriff's Department. He remarried in September 1994 and his new wife and her family were developing a good relationship with his daughter. Except for the usual disruption a custody battle has on a young child, the daughter was progressing normally and was a bright and articulate young girl. There were no emotional or physical problems evident. Mother, age 22 at the time of the hearing, had an associate degree in electronics and computer engineering from Tampa Technical Institute. Her second child, a daughter, was born out-of-wedlock in January 1996. At the time of the hearing Mother was holding down two jobs: a part-time manager's position at a retail carpet store and a part-time child care provider for a church in Arcadia. Both jobs allowed her to take her children to work with her. Mother had no current intention of having the father of her second daughter become a part of their daily life. After moving several times since dissolution, Mother was currently living with her friend and employer, Ms. Taylor, in the latter's home. Mother and her two daughters occupied one of the bedrooms. Ms. Taylor's own three children and her fiance also occupied the home.
Father testified that Mother denied him visitation when he was behind in support payments. Further, according to Father, when he picked up his daughter for visitation, the child always appeared dirty, tired and hungry. He said he went out of his way to enhance his daughter's relationship with her mother but claimed that Mother was not encouraging the child's relationship with him. During the period Father had temporary custody of his daughter while his modification petition was pending, Mother contacted the Department of Health and Rehabilitative Services alleging that the child may have suffered sexual abuse. Upon investigation *780 and a pelvic exam of the child, this allegation was determined to be unfounded.
Mother testified that although she was currently living with her friend and employer, Ms. Taylor, she and her daughters had their own private room with separate beds. At the time of the final judgment of dissolution Mother and the parties' child had been living on their own. She had recently signed a lease of a mobile home where she and her daughters would soon live on their own once again.
The trial court appointed a Guardian Ad Litem (GAL) who made a written report which was entered into evidence upon stipulation of the parties. During his unannounced visits with the parties, and especially with the child, the GAL did not note any emotional, mental, or physical problems.[1] The GAL concluded that but for Ms. Taylor's generosity and willingness to share her home with Mother, Mother would not be able to survive financially. He found Mother's living quarters with Ms. Taylor were crowded and that she was not able to live independently, lacking the financial resources to support herself and her two daughters. The GAL recommended that Father's temporary residential custody of the child be continued as permanent residential custody if Mother could not claim progress toward independent living and adequate financial support for herself and her two daughters.
The final report of the psychologist who had tested and interviewed the parties was stipulated into evidence. Dr. Lynn Bernstein concluded that the parties had no significant psychological problems although she recommended family therapy for problem solving regarding the custody/visitation litigation stress, a "Phase of Life" problem. The child did not exhibit any parental alienation syndrome which is sometimes seen with children who are shunted between separated parents in divorce situations. The child did exhibit loving, caring, affectionate relationships with Mother, Father, and her step-mother. Dr. Bernstein concluded that the child's then current but temporary placement in Father's home should continue as a permanent arrangement given the stability that his two-parent home provided.
The order under review generally outlined the facts above and concluded that Mother's living arrangement was detrimental to the child and adversely affected the child's ability to identify her real family from others. The trial court also noted that Mother had not regained the ability to live independently without the aid and generosity of friends, especially in light of the increased financial burden of a second child. Additionally, the trial court expressed concern that the child had been subjected to a needless pelvic exam as a result of Mother's report of possible abuse. The trial court did note that according to the psychologist's report the child had great love and affection for both parents and any frustration or anxiety or situational stress apparent is reasonable and to be expected.
The trial court's factual findings are supported on the record before us. However, we differ with the trial court that, as a matter of law, these facts show that a substantial and material change of circumstances has occurred since the date of dissolution. Tsavaris v. NCNB National Bank, 497 So.2d 1338 (Fla. 2d DCA 1986). Based on this record, we find that Father has failed to carry his extraordinary burden of showing a substantial change in circumstances. The trial court's authority and discretion in a modification proceeding are much more restricted than at the time of the initial custody determination. Grumney v. Haber, 641 So.2d 906 (Fla. 2d DCA 1994); Kelly v. Kelly, 642 So.2d 800 (Fla. 2d DCA 1994), review denied, 651 So.2d 1194 (Fla.1995); Jablon v. Jablon, 579 So.2d 902 (Fla. 2d DCA 1991). In the case before us, most of the trial court's findings and the majority of the evidence presented dealt only with the issue of the child's placement as if this were an initial determination. This is not the correct standard to apply in a modification proceeding. Culpepper v. Culpepper, 408 So.2d 782 (Fla. 2d DCA 1982).
*781 We recently stated the test a trial court considering modification must apply. See Gibbs v. Gibbs, 686 So.2d 639 (Fla. 2d DCA 1996). The test is a two-pronged one. "First, the party seeking to modify a custody decree must plead and establish that circumstances have substantially changed since the final judgment ... [and s]econd, the petitioner must establish that the change has such an important impact on the child that the court is justified in imposing a change of custody in the `best interests' of the child." Id. at 641 (emphasis in original). The "best interests" prong is proven when the trial court finds that a "change in custody will so clearly promote or improve the child's well-being to such an extent that any reasonable parent would understand that maintaining the status quo would be detrimental to the child's overall best interests." Id. See also Fuxan v. Seaholm, 685 So.2d 899 (Fla. 2d DCA 1996); Grumney; Kelly; Eddy v. Napier, 558 So.2d 199 (Fla. 2d DCA 1990); Jablon. Father has failed to meet both prongs of this test. We do not disturb the trial court's credibility findings in favor of Father over Mother; for example whether she, in fact, named Father as the alleged sexual abuser of the child in reporting her suspicions to HRS. We find, rather, that the evidence of change of circumstances is insufficient as a matter of law and, further, that Father has not shown that the child's best interests would be served by a change in custody. There have been changes, but they have not been substantial enough, nor impacted the child to any negative extent. "This test involves more than a decision that the petitioning parent's home would be `better' for the child, and requires a determination that there is some significant inadequacy in the care provided by the custodial parent." Gibbs, 686 So.2d at 641. For example, in the case before us, the GAL found that there was "no evidence to suggest that either the father or the mother are incapable of providing a caring and safe environment" for the child.
It is true that there has been a change in Mother's economic fortunes with resulting lifestyle modifications since dissolution, but there is a dearth of evidence that the child's mental, physical, and emotional well-being have suffered as a result. For example, the psychologist's observations led her to conclude that the child interacted well with both parents and the step-parent and was involved in caring and affectionate relationships with all. There is nothing in the psychologist's report reflecting negatively on either Mother or Father as a parent. The trial court's concern that Mother's then current combined living arrangement is adversely affecting the child's ability to identify her real family from others is simply not supported in the evidence. Neither is the fact that Mother is temporarily unable to live independently a valid reason to remove residential custody from her where there is no evidence that the child is being harmed in any way or that the child's development has suffered. As contrasted to the economic difficulties Mother has experienced since dissolution, the evidence shows that Father's circumstances have improved. The trial court's findings show it unduly emphasized that Father had improved his life by remarriage and has bettered his financial circumstances with stable employment so that he now appears to be the preferred residential choice. However, improving his financial circumstances does not warrant modification. Culpepper, 408 So.2d at 784; Stricklin v. Stricklin, 383 So.2d 1183 (Fla. 5th DCA 1980); Collins v. Newton, 362 So.2d 174 (Fla. 2d DCA 1978).
In Grumney the father petitioned for modification alleging the mother's financial instability, her frequent changes of residence, her series of relationships with men, and the birth of a second child out of wedlock. We held there was no evidence the mother had failed to meet the needs of the child and further that the father had not met his extraordinary burden of showing the requisite change in circumstances. Id. at 907; Culpepper; see also Bryant v. Meredith, 610 So.2d 586 (Fla. 2d DCA 1992). We arrive at a similar conclusion in the case before us. Although Mother may have acted on occasion in a way that a more mature parent would have avoided (making unfounded accusations of sexual abuse, sometimes frustrating Father's visitations attempts, giving birth to a second child when her economic situation was not at its best), none of these missteps rises, singly or cumulatively, to support a conclusion *782 that she should be punished by removing the residential custody granted to her at dissolution. This is especially so when the evidence points only to the conclusion that the child is growing up well-tended in Mother's care.
Accordingly, because Father did not meet the two-prong extraordinary burden test laid out in Gibbs, we reverse the final order under review and remand for entry of an order denying Father's petition.
BLUE and QUINCE, JJ., concur.
NOTES
[1] This contrasts with the Father's claim that the child always appeared dirty, tired and hungry. In any event, the trial court made no finding relating to this claim of Father in its modification order.