818 So.2d 530 (2002)
Melody WILLIS, Appellant,
v.
Michael WILLIS, Jr., Appellee.
No. 2D01-829.
District Court of Appeal of Florida, Second District.
January 16, 2002.
Rehearing Denied February 27, 2002.
*532 Raymond J. Rafool, II, of Rafool & Rafool, P.A., Winter Haven, for Appellant.
Victor R. Smith of The Smith Law Group, P.A., Lake Alfred, for Appellee.
BLUE, Chief Judge.
Melody Willis, the mother, appeals a nonfinal order granting temporary custody of the parties' minor child to Michael Willis, Jr., the father. She argues that the trial court's findings are not supported by the evidence and that the trial court erred by enjoining the parties from taking the child out of the court's jurisdiction when an injunction was not sought in the pleadings nor tried by consent. We agree with both arguments and reverse.
Melody and Michael Willis are in the process of dissolving their short-term marriage. They have one child, a girl who was born in 1998. At the time of the pregnancy, the parties planned that the Mother would stay at home. Unfortunately, the Father lost his job, at a family-owned business, due to a conflict with his family. To support the family, the Mother began a short career as an exotic dancer. The Father encouraged and assisted her in this endeavor. While temporarily working at a club in New Jersey, the Mother began a relationship with the club's manager. She has stopped working, and they plan to marry once the Mother's marriage is dissolved. The Father filed a petition for dissolution, seeking the court's approval of a settlement agreement signed by the parties. The agreement gave custody to the Mother, waived alimony, and purported to waive the Father's responsibility for child support. The Father voluntarily dismissed the petition for dissolution when the Mother moved to set aside the settlement agreement. He then filed a new petition for dissolution, seeking custody of the parties' child. Up to that point, the Mother had custody of the child.
The Father also filed an emergency motion for temporary custody. In its order granting custody to the Father, the trial court tracked the statutory criteria set forth in section 61.13(3), Florida Statutes (2000). Of the twelve factors addressed in the order, the trial court concluded that eight factors weighed in the Father's favor, one factor favored both parties, and three factors were not applicable.
In two factors, the trial court found that the Father was more likely to allow frequent and continuing contact between the child and the Mother and that the Father was more willing and able to facilitate the relationship between the child and the Mother. See § 61.13(3)(a), (j). In finding for the Father, the trial court emphasized his lack of visitation over the Christmas holiday. The trial court made no mention of the fact that the Mother had facilitated more-than-ample visitation in the several months preceding the holiday, nor did the trial court mention the only reason provided for the Father's lack of holiday visitation: namely, the Father's refusal to sign a commitment to return the child on Christmas Day. In a third factor, the trial court found that the Father had a greater capacity and disposition to provide for the child's material needs. See § 61.13(3)(c). In favor of the Father, the trial court found that he had a good, stable job at a family-owned business while the Mother was unemployed. The trial court *533 ignored the evidence, however, that the Father had not worked for a portion of the parties' marriage and that the Mother had been the sole support and breadwinner. Nor did the trial court consider that the Mother was the child's primary caregiver and that she, although unemployed, would have a greater capacity to provide for the child's material needs if the Father paid child support. The trial court did not address the parties' original settlement agreement, which gave custody to the Mother but purported to waive alimony and child support. The record shows that the Mother moved to set aside the settlement agreement, alleging that the Father had failed to keep his oral promise to provide child support directly to the Mother. In light of this evidence, we conclude that the record does not support the trial court's finding in the Father's favor on these three factors.
In two additional factors, the trial court found that the Father would provide a more stable and satisfactory environment. See § 61.13(3)(d), (e). The trial court found that the Mother's living arrangements were neither "stable, wholesome nor satisfactory," but there was little or no evidence to support these findings. From photographs of the Mother's three-bedroom apartment that were introduced into evidence, the living arrangements looked entirely satisfactory. The child had her own bedroom, plenty of clothes, and toys. There was no evidence showing an unwholesome environment. The child was enrolled in a daycare program, but she had not begun because she was visiting with her Father in Florida.
In two more factors, the trial court found that the Father was superior to the Mother in moral fitness and mental health. See § 61.13(3)(f), (g). Here, the trial court criticized the Mother for moving with the child to New Jersey, but it ignored the unrebutted evidence that she did so with the Father's full consent and approval. The evidence showed one incident of the Mother under the influence of prescription drugs, but the trial court mischaracterized this as a "history" of abuse. Regarding the moral fitness of the parents, the trial court's order admonished the Father for attempting to point a "moral finger of righteous indignation at the wife as it relates to her recent profession as a nude dancer and model [when] [a]ll of her professional activities were indeed done with his blessings." But the trial court determined that the Mother's living arrangements were not wholesome. The unrebutted evidence showed that the Mother plans to marry once her divorce is finalized. For the trial court to consider a parent's conduct on the issue of custody, the evidence must show a direct impact on the child. The possibility of a negative impact is not sufficient. Jacoby v. Jacoby, 763 So.2d 410 (Fla. 2d DCA 2000). In determining a party's moral fitness for purposes of custody, the trial court should focus on whether the parent's conduct has had or is reasonably likely to have an adverse impact. Packard v. Packard, 697 So.2d 1292 (Fla. 1st DCA 1997). Although one parent has committed adultery, it may be in the child's best interest for that parent to receive custody. Dinkel v. Dinkel, 322 So.2d 22 (Fla.1975). Adultery may or may not have a direct bearing on the welfare of a child of tender years. Id.; see also Farrow v. Farrow, 263 So.2d 588 (Fla. 2d DCA 1972). Based on the evidence as a whole in light of the cited cases, we conclude that the record does not fully support the trial court's findings.
In the final factor addressing all other relevant facts, see § 61.13(3)(m), the trial court expressed concern over one aspect of the child's behavior where she would pretend to take her medicine and *534 over the Mother's decision to give the child a herbal supplement. Other than the Father's generalized concern about the supplement, there was no evidence to show whether it was harmful or appropriate for a child to take. Nor was there evidence to show that the child took any other medicine.
Because the trial court failed to address evidence that favored the Mother and made findings that are not supported by the record, we reverse the order of temporary custody. This decision has the effect also of reversing the injunction against removing the child from the court's jurisdiction, which was improperly entered without notice. See Dep't of Revenue ex rel. Hicks v. Hicks, 681 So.2d 812, 812 (Fla. 2d DCA 1996) (holding that it was a due process violation to determine matters that were not the subject of appropriate pleadings or notice).
Reversed and remanded for further proceedings.
NORTHCUTT, J., and RAMSBERGER, PETER, ASSOCIATE JUDGE, Concur.