899 So.2d 357 (2005)
Noel McKINNON, f/k/a Noel E. Staats, Appellant,
v.
Richard B. STAATS, Appellee.
No. 1D04-2657.
District Court of Appeal of Florida, First District.
March 21, 2005.
Rehearing Denied April 27, 2005.
*358 Kristin Adamson and Jerome M. Novey of Novey, Mendelson & Adamson, Tallahassee, Attorneys for Appellant.
Rhonda S. Clyatt, Panama City, Attorney for Appellee.
*359 THOMAS, J.
We have before us for review a Final Judgment Granting Modification of Primary Residence. Because we do not find a substantial change in circumstances that would warrant a post-dissolution change in custody, we reverse the Final Judgment Granting Modification of Primary Residence.
To modify child custody, the non-custodial parent seeking modification bears an extraordinary burden. Zediker v. Zediker, 444 So.2d 1034 (Fla. 1st DCA 1984); Scaringe v. Herrick, 711 So.2d 204 (Fla. 2d DCA 1998). The trial court has less discretion in modifying a custody decree than it has when entering the original order. Zediker, 444 So.2d at 1037. The trial judge determines what is in the best interest of the child, and the appellate court should not reverse those findings absent a showing of an abuse of discretion. Dinkel v. Dinkel, 322 So.2d 22, 24 (Fla. 1975). Our scope of review is not whether reasonable people could differ as to the conclusion of the trial court, but whether there was "competent and substantial evidence revealing that substantial or material changes in the parties' circumstances had occurred subsequent to the dissolution and that a change of custody would promote the best interests of the children involved." Zediker, 444 So.2d 1038 (emphasis in original). If there is competent, substantial evidence supporting the trial judge's conclusion, the trial court's decision should be affirmed. Id. See also Sanders v. Sanders, 376 So.2d 880, 882 (Fla. 1st DCA 1979), cert. denied, 388 So.2d 1117 (Fla.1980) (holding that where the mother failed to present competent, substantial evidence of a material change in circumstances, a modification of custody was not justified); Cf. Dobson v. Dobson 821 So.2d 1219, 1219 (Fla. 5th DCA 2002) (holding that where the record reflected competent, substantial evidence that the mother's home was detrimental to the child, a change in custody was permitted).
The "best interests" of the child are shown when the trial court concludes that changing custody will promote or improve the child's well being to such an extent that maintaining the status quo would be detrimental to the child. Blosser v. Blosser, 707 So.2d 778, 781 (Fla. 2d DCA 1998). The presumption in favor of the custodial parent in a custody modification proceeding can only be overcome by satisfying the extraordinary burden of proving the two criteria mentioned above. Gibbs v. Gibbs, 686 So.2d 639 (Fla. 2d DCA 1997).
Appellant testified that she had experienced some emotional turmoil soon after the parties' dissolution that led to her erratic behavior and her use of alcohol during 2001 and early 2002. She also admitted to living with a former Panama City Police officer who sold and manufactured GHB in her home in March of 2002, although the record demonstrates that Appellant voiced her disapproval of the behavior and soon thereafter terminated the relationship. However, no evidence was submitted that the child knew of this occurrence. The record shows that Appellant has not engaged in such behavior for several years and the child has not suffered any impact from her behavior.
By the time of the April 2004 hearing, Appellant testified she had not engaged in such behavior for nearly two years. Appellant married her current husband on June 26, 2002, and has remained in a stable marital relationship since that time. They currently live near Boston, Massachusetts with the child. The child's teacher stated that Appellant, her current husband, and the child are a normal, well adjusted family.
*360 When a court examines a custodial parent's moral fitness, "the trial court should focus on whether the parent's conduct has had or is reasonably likely to have an adverse impact." Willis v. Willis, 818 So.2d 530, 533 (Fla. 2d DCA 2002). See also Kelly v. Kelly, 642 So.2d 800 (Fla. 2d DCA 1994) (holding that there was not sufficient evidence to show that the custodial parent's instability affected the child so as to warrant a change in custody); Walden v. Walden, 483 So.2d 87 (Fla. 1st DCA 1986) (reversing a custody modification where no evidence that custodial parent's adulterous conduct adversely affected the child). For a custodial parent's behavior to have an adverse impact on the child, there must be evidence of a direct adverse impact on the child; finding the possibility of an adverse impact is not enough. Dinkel, 322 So.2d at 24. Further, "poor relationship choices standing alone may not support a custody modification where the residential parent ... has subsequently established a stable home, and the child's needs have always been met." Sullivan v. Sullivan, 736 So.2d 103, 105 (Fla. 4th DCA 1999). Additionally, circumstances such as an unstable living environment of the parent, participation in a drug rehabilitation program, and domestic violence issues have been found not to be enough to warrant a modification of custody. Burger v. Burger, 862 So.2d 828 (Fla. 2d DCA 2003); cf. O'Neill v. O'Neill, 823 So.2d 837 (Fla. 5th DCA 2002) (finding a modification of custody warranted where the mother drove a car intoxicated with the child as a passenger, threatened to take the lives of her children, and used illegal substances in the presence of her children). Thus, if there is no evidence that a parent's moral and relationship choices had an adverse impact on the child, there should be no custody modification.
In the Final Judgment Granting Modification of Primary Residence, the lower court did not cite any evidence showing a direct adverse impact on the child. The court noted that if the child remained with Appellant, she would "eventually completely alienate the Father's love and affection for his child and interfere with a parent's relationship to his child, causing continued prospective harm as well as being a great detriment to the child's overall welfare." However, the testimony submitted did not evince a direct negative impact on the child. Additionally, the court did not cite any evidence in the final judgment that the child had suffered an adverse impact due to her relationship with Appellant. However, the lower court did recognize that Appellant appeared to be in a more stable environment since she remarried. In fact, Appellant's erratic behavior occurred during 2001 and early 2002. At the time of the trial, Appellant had been in a stable environment for two years. Thus, there was no substantial, competent evidence to show that the child suffered a direct adverse impact due to Appellant's moral and relationship choices.
The inability of parents to communicate does not amount to a substantial change of circumstances that would justify a custody modification. Zediker, 444 So.2d at 1035 (holding that accusations and arguments centering around bill payment and visitation constituted an inability to communicate that did not warrant a custody modification). This Court has even held that when the custodial mother does not keep the father apprised of a child's activities, and the father has the ability to keep himself informed, such evidence only establishes a communication problem between the parents and not a detrimental impact on the child. Myers v. Myers, 673 So.2d 49, 50 (Fla. 1st DCA 1995). This communication problem does not constitute a change in circumstances for the purposes of a custody modification. Id.
*361 In this case, communication between the parties has been difficult. While the child participated in cell phone calls with Appellee, no evidence shows that she was aware of the communication problems between her parents. In addition, the lower court found that Appellant does not keep Appellee informed of the child's schooling. However, Appellee has not pursued other methods to remain informed, as the child's teacher testified that she has never received a request for information from Appellee. None of this evidence constitutes sufficient grounds to remove the child from Appellant's primary custody. Zediker, 444 So.2d at 1035.
The most significant finding by the lower court was the child has been "parentally alienated" from the Father. Such a finding if based on competent, substantial evidence can justify a post-dissolution modification of custody. Creating a "suitable home with parental involvement is a stabilizing and positive occurrence in the life of a young child." Jablon v. Jablon, 579 So.2d 902, 904 (Fla. 2d DCA 1991), citing Stricklin v. Stricklin, 383 So.2d 1183 (Fla. 5th DCA 1980). A court will examine the testimony submitted in a custody modification to determine if a "pseudo-parental" relationship is detrimental to a child. Jablon, 579 So.2d 904. See also Dobbins v. Dobbins, 584 So.2d 1113 (Fla. 1st DCA 1991) (holding that the children calling their stepfather "daddy" did not amount to alienation).
The finding of parental alienation in this case was based upon communication difficulties between the parents. These difficulties have arisen because the step-father usually handles communications with Appellee. This is not sufficient evidence that Appellee's visitation rights have been denied. In fact, Appellee still visits with the child. Thus, there is no competent, substantial evidence showing that the child has been alienated from her father.
As the court noted in Kelly, we appreciate the difficult role of the trial court in choosing between two caring parents to determine the best interest of the child. 642 So.2d 800 (Fla. 2d DCA 1994). In this case, however, the trial court's finding that Appellee met his extraordinary burden was not supported by the record. The evidence presented here did not amount to a substantial change in circumstances to warrant a post-dissolution modification of custody. Therefore, we reverse the order modifying primary residential custody.
REVERSED.
BENTON and LEWIS JJ., concur.