954 So.2d 698 (2007)
Jennifer OGILVIE, Appellant,
v.
Dale Dean OGILVIE, Appellee.
No. 1D06-2673.
District Court of Appeal of Florida, First District.
April 19, 2007.
Richard H. Powell, Esquire of Richard H. Powell & Associates, P.A., Fort Walton Beach, for Appellant.
*699 Ross A. Keene, Esquire of Beroset & Keene, Pensacola and Craig A. Vigodsky, Esquire of Meador & Vigodsky, P.A., Pensacola, for Appellee.
BENTON, J.
Jennifer Ogilvie appeals a final judgment domesticating the parties' New York divorce decree, which awarded sole custody of the children of the marriage to Ms. Ogilvie and "reasonable visitation as the parties agree" to their father, Dale Dean Ogilvie, because the trial judge went on to modify the domesticated decree by replacing its custody and visitation provisions with the Okaloosa County Shared Parenting Agreement. Domestication of the foreign decree is not in dispute. We reverse the order insofar as it modifies the original custody award, and remand for further proceedings.
The trial court had jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA). Both parents and their children moved to Florida after the New York decree issued and continue to reside in Florida. See § 61.516, Fla. Stat. (2005) (providing that a Florida court has jurisdiction to "modify a child custody determination made by a court of another state" if factors that would have given a Florida court jurisdiction to make an initial determination (under section 61.514(1)(a) or (b)) are present, and the Florida court[1] "determines that the child [and] the child's parents . . . do not presently reside in the other state"); § 61.514(1)(a), Fla. Stat. (2005) (conferring jurisdiction to enter an initial custody order where Florida "is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within 6 months before the commencement" and "a parent continues to live in this state"). See also Staats v. McKinnon, 924 So.2d 82, 84-85 (Fla. 1st DCA 2006) (noting that the UCCJEA grants jurisdiction to modify another state's custody determination where the child and parents no longer reside in the state in which the custody determination was originally made, so long as there is no pending custody action in the state from which the child and parents moved). Our own jurisdiction is also clear. See Fla. R.App. P. 9.030(b)(1)(A) (2006); see also Morales v. Morales, 915 So.2d 247, 248 (Fla. 5th DCA 2005).
As in the case of a Florida decree awarding child custody, the threshold question when modification is sought is whether there has been a substantial, material change in circumstances since entry of the decree. See Cooper v. Gress, 854 So.2d 262, 267 (Fla. 1st DCA 2003) ("The posture of a modification proceeding is entirely different from that of an initial custody determination, and the party seeking to modify custody has a much heavier burden to show a proper ground for the change."), approved in Wade v. Hirschman, *700 903 So.2d 928, 930-31 (Fla.2005). Because the New York divorce decree enjoys the same dignity as a Florida decree, modification requires a preliminary showing of equally material and substantial changed circumstances. Cf. Wade, 903 So.2d at 932 ("We conclude that unless otherwise provided in the final judgment, the two-part substantial change test used in Cooper applies to modification of all custody agreements.").
"In seeking a modification of custody, the movant must show both that the circumstances have substantially, materially changed since the original custody determination and that the child's best interests justify changing custody." Cooper, 854 So.2d at 265 ("[T]he substantial change must be one that was not reasonably contemplated at the time of the original judgment."). There exists a "long-established requirement that the party seeking to modify custody satisfy the extraordinary burden set forth in the two-part test.[[2]] To hold otherwise would render any . . . final judgment inherently unstable." Id. at 267. "Thus, the [first] pertinent question before the trial court in considering [a modification] petition [i]s whether any modification [i]s warranted." Id. Only if this preliminary question is answered in the affirmative does it become relevant whether it would be "better" for the child for the parents or either of them to be recast in a role other than the one the original judgment assigned them. See id.
*701 The trial court did not find and Mr. Ogilvie did not prove a substantial, material change in circumstances warranting modification of the New York decree in the present case. The former husband did not meet his burden to prove a substantial, material change in circumstances that would permit a change in custody. See, e.g., Wyckoff v. Wyckoff, 820 So.2d 350, 356 (Fla. 2d DCA 2002) ("The evidence presented to the trial court was insufficient to meet the extraordinary burden necessary to justify judicial intervention in the custody arrangement initially agreed upon by the parties.").
The trial court did find that Mr. and Ms. Ogilvie were unable to communicate with one another, but "[t]he inability of parents to communicate does not amount to a substantial change of circumstances that would justify a custody modification." McKinnon v. Staats, 899 So.2d 357, 360 (Fla. 1st DCA 2005). See also Cooper, 854 So.2d at 266 ("The parties' failure to communicate with each other, without some other material, unanticipated change since the final judgment, is not a proper legal ground for modifying custody."). "This Court has even held that when the custodial mother does not keep the father apprised of a child's activities, and the father has the ability to keep himself informed, such evidence only establishes a communication problem. . . . This communication problem does not constitute a change in circumstances for the purposes of a custody modification." McKinnon, 899 So.2d at 360-61 (noting former husband had "not pursued other methods to remain informed," such as making inquiries with the child's teacher).
No evidence was submitted proving that "parental alienation" had occurred, nor did the trial court make any such finding. Cf. id. at 361 ("The most significant finding by the lower court was the child has been `parentally alienated' from the Father. Such a finding if based on competent, substantial evidence can justify a post-dissolution modification of custody. . . . [But t]he finding of parental alienation in this case was based upon communication difficulties between the parents. . . . This is not sufficient evidence that Appellee's visitation rights have been denied. In fact, Appellee still visits with the child. Thus, there is no competent, substantial evidence showing that the child has been alienated from her father.").
The evidence also showed, of course, that parents and children had all relocated since entry of the New York decree, but this alone was insufficient. See Sotomayor v. Sotomayor, 891 So.2d 559, 561 (Fla. 2d DCA 2004) (holding that "a custodial parent's move to a foreign state, without more, is not a substantial change of circumstances that would support a modification of custody"). There is no dispute that both parties moved to Florida after the New York decree, but "courts have routinely held that relocation alone is not a substantial change in circumstances to support a modification of custody." Shafer v. Shafer, 898 So.2d 1053, 1055-56 (Fla. 4th DCA 2005). See also Giangrande v. Henao, 898 So.2d 1104, 1106 (Fla. 2d DCA 2005) (reversing because former wife's relocating to a foreign country with her new husband, without more, was insufficient to support a finding of substantial change in the parties' circumstances sufficient to support modification of a custody award).
Because Mr. Ogilvie failed to prove a change in circumstances sufficiently substantial and material to warrant modification of the New York custody decree, no further inquiry into "the desirous effect of having Mr. Ogilvie involved in the minor children's lives," "the parenting skills Mr. Ogilvie possesses," or whether the children were better off having both parents sharing *702 in the major decision-making was justified.[3]See Cooper, 854 So.2d at 266-68 (holding that where a party fails to prove the threshold ground that "an unanticipated substantial, material change in circumstances since the entry of the final judgment," there is no basis "to justify any modification of custody," whether or not there is evidence that one party would be "better" in some different role). Accord Sotomayor, 891 So.2d at 561 ("Absent proof of a substantial change of circumstances, we need not go any further.").
The judgment is reversed insofar as it modifies the original award of sole custody of the parties' children to their mother, and the case is remanded for further proceedings.
BARFIELD and POLSTON, JJ., concur.
NOTES
[1] While the predecessor to the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), the Uniform Child Custody Jurisdiction Act (UCCJA), see Ch. 2002-65, § 5, at 852, 858, Laws of Fla. (creating the UCCJEA to replace the UCCJA effective October 1, 2002), required that "[p]etitions to modify a decree . . . be addressed to the court which rendered the original decree even if a second state has become the `home state' of a child," Staats v. McKinnon, 924 So.2d 82, 85 (Fla. 1st DCA 2006) (quoting Lamon v. Rewis, 592 So.2d 1223, 1225 (Fla. 1st DCA 1992), the UCCJEA, codified at section 61.516, Florida Statutes (2005), provides that a Florida court has jurisdiction to modify a foreign custody judgment where "[a] court of this state or a court of the other state determines that the child [and] the child's parents . . . do not presently reside in the other state." § 61.516(2), Fla. Stat. (2005)) (emphasis supplied). See also Morales v. Salazar, 833 So.2d 226, 228 n. 3 (Fla. 5th DCA 2002) (noting change in modification jurisdiction standard upon adoption of section 61.516, effective October 1, 2002).
[2] Once the burden of showing a substantial, material change has been met, the second part of the modification test involves the same broad "best interest" inquiry as an initial custody determination. See Wade v. Hirschman, 903 So.2d 928, 933-34 (Fla.2005) (noting the stabilizing effect of requiring proof of a substantial, material change in circumstances as a prerequisite to considering "best interests" and possible modification). On this point, the Wade court said: "The arguments favoring a finding of detriment [as a precondition for modification] fail to recognize adequately the purpose of the `best interest of the child' prong [as opposed to] the substantial change [of circumstances] test, which when properly applied ensures the stability of custody-related awards because of the res judicata effect of the original decree." Id. at 934.

Without reference to section 61.13(2)(b)(2.), Florida Statutes, the Florida Supreme Court concluded in the Wade case that
[r]equiring proof of detriment to the child in order to [justify modification] misstates the burden that is necessary to overcome the res judicata effect of the previous decree and conflicts with the best interest standard because it restricts the trial court's ability to act in the best interest of the child in custody modification proceedings.
Id. at 933 n. 11. Our supreme court thus implicitly disapproved (in part) cases, including Sheridan v. Sheridan, 899 So.2d 469, 470 (Fla. 2d DCA 2005); McKinnon v. Staats, 899 So.2d 357, 359 (Fla. 1st DCA 2005); Sotomayor v. Sotomayor, 891 So.2d 559, 561 (Fla. 2d DCA 2004); Johnson v. Adair, 884 So.2d 1169, 1172-73 (Fla. 2d DCA 2004); Agranoff v. Agranoff, 882 So.2d 1085, 1086 (Fla. 2d DCA 2004); Ward v. Ward, 874 So.2d 634, 638 (Fla. 3d DCA 2004); Burger v. Burger, 862 So.2d 828, 831-32 (Fla. 2d DCA 2003); Perdices v. Perdices, 800 So.2d 289, 290 (Fla. 3d DCA 2001); Muniz v. Muniz, 789 So.2d 370, 371-72 (Fla. 3d DCA 2001); Goodmon v. Goodmon, 779 So.2d 490, 491 (Fla. 2d DCA 2000); Young v. Young, 732 So.2d 1133, 1134 (Fla. 1st DCA 1999); Metcalfe v. Metcalfe, 655 So.2d 1251, 1253 (Fla. 3d DCA 1995); Kelly v. Kelly, 642 So.2d 800, 802 (Fla. 2d DCA 1994), to the extent they imported into the best interest prong a "detriment" or "adverse impact" component. Wade, 903 So.2d at 933-34. But see Grimaldi v. Grimaldi, 721 So.2d 820, 821-22 (Fla. 4th DCA 1998) (reversing trial court's modification of custody from shared parental responsibility to sole parental responsibility where the evidence did not show that shared parental responsibility was detrimental to the child, quoting section 61.13(2)(b)(2.), Florida Statutes, which provides that "[t]he court shall order that the parental responsibility for a minor child be shared by both parents unless the court finds that shared parental responsibility would be detrimental to the child."); Hunter v. Hunter, 540 So.2d 235, 237 (Fla. 3d DCA 1989) (same).
[3] There is also some question as to whether the trial court actually considered the required "best interest" factors, pursuant to section 61.13, Florida Statutes (2005), to determine that modification of the New York decree was in the best interest of the children. See § 61.13(3), Fla. Stat. (2005) (providing that, "[f]or purposes of shared parental responsibility and primary residence, the best interests of the child shall include an evaluation of all factors affecting the welfare and interests of the child, including" such considerations as "[t]he love, affection, and other emotional ties existing between the parents and the child," "[t]he capacity and disposition of the parents to provide the child with food, clothing, medical care . . ., and other material needs," "[t]he length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity," "[t]he permanence [of the] proposed custodial home," "[t]he moral fitness of the parents," "[t]he home, school, and community record of the child," and the "ability of each parent to facilitate and encourage a close and continuing parent-child relationship between the child and the other party"). See also Wyckoff v. Wyckoff, 820 So.2d 350, 352 (Fla. 2d DCA 2002) (reversing and remanding, stating "it appears the trial court applied a `best interests' standard to evaluate whether there should be a change in the custody of these children, as opposed to the `extraordinary burden' test," which requires that the moving party first establish that circumstances have substantially changed).